264 N.W.2d 194 (1978)
200 Neb. 481
The STATE of Nebraska ex rel. NEBRASKA STATE BAR ASSOCIATION, Relator,
v.
Ralph R. BREMERS, a member of the Nebraska State Bar Association, Respondent.
No. 40830.
Supreme Court of Nebraska.
April 5, 1978.
*195 Paul L. Douglas, Atty. Gen., C. C. Sheldon, Asst. Atty. Gen., for relator.
Clayton H. Shrout of Shrout, Christian, Krieger, Mori & Merwald, Omaha, for respondent.
Heard before WHITE, C. J., and SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY and WHITE, JJ.
PER CURIAM.
This is a disciplinary proceeding brought against Ralph R. Bremers, a practicing member of the Nebraska State Bar Association. The formal charges alleged that respondent had violated DR 1-102(A)(1), (4), (5), and (6); DR 6-101(A)(3); and DR 9-102(A) and DR 9-102(B)(1), (2), (3), and (4), of the Code of Professional Responsibility. Respondent was also charged with violating his oath as an attorney at law, and with violation of several statutory provisions dealing with administering trust funds. Following a hearing before the referee, the referee filed his report, including findings of fact and conclusions of law, and recommended disbarment.
The charges against the respondent primarily involve his conduct in connection with the guardianship estate of Amy R. Rich, and subsequently the estate of Amy *196 R. Rich. Other estates are tangentially involved but are not directly and primarily involved here.
On August 6, 1952, Amy R. Rich was declared incompetent by the county court of Douglas County, Nebraska, and her brother, Frank C. Rich, was appointed guardian. Respondent was his attorney. Frank Rich filed annual reports as guardian until his death in 1960. At that time respondent became the successor guardian, as well as the attorney for the guardianship estate. On January 22, 1972, Amy R. Rich died. At that time respondent had not filed any reports with the county court as to his doings as guardian for any year. In response to a court order to show cause dated October 18, 1973, respondent filed a guardianship report on November 16, 1973, which purported to cover his acts and doings from December 2, 1960, to December 1, 1965. The report contained no reference to loans made, but contained one entry showing interest on loans and deposits of $316.19 for the entire reporting period. The report also showed the payment of attorney's fees and guardian's commissions and expenses to respondent in the sum of $1,902.14. No application had been made to the court for an order authorizing investments of any of the guardianship funds in loans, and no application had been made to the court fixing or authorizing the payment of fees or commissions.
On November 27, 1973, respondent filed a report purporting to be of his acts and doings from December 2, 1965, to January 23, 1972. A lump sum item in that report showed interest and dividends on investments of $6,848.53, and one other item showed the payment of guardian's commissions and attorney's fees and expenses of $12,095.50. Loans had been made and fees paid without authorization or court approval. Subsequent corrected and inconsistent reports were filed, the final one on December 28, 1973.
Meanwhile respondent was appointed as the administrator C. T. A. of the estate of Amy R. Rich on April 25, 1972, and letters of administration were issued to him. On January 2, 1974, the county court entered an order finding respondent unsuitable to discharge his trust as administrator and removing him from that office. The court appointed a successor administrator and ordered respondent to produce all his records on January 10, 1974. No accounting of any kind was filed in the estate prior to respondent's removal as administrator. In response to the court order the respondent filed a report on or about March 1, 1974.
Hearings were held in the county court with respect to the accountings of respondent in both the guardianship and estate proceedings. Essentially, the county court found that the respondent's reports were erroneous, incomplete, unreliable, and misleading; that the respondent had made numerous loans and advances to various relatives and friends of respondent without court authorization or approval, some of which had been repaid and some of which had not. The county court also found that respondent had made excessive and unauthorized payments of attorney's fees to himself without authorization by the court. The county court surcharged respondent the sum of $25,344.67 for assets not properly accounted for in the guardianship proceeding, and the sum of $4,183.91 for assets not accounted for in the probate estate.
The respondent's direct appeal of those judgments was dismissed on motion. Thereafter the successor administrator of the estate of Amy R. Rich obtained court approval and brought action against the respondent and his surety to recover the surcharge of $25,344.67 in the guardianship estate. The respondent filed a motion for jury trial and when that motion was denied at trial, he refused to adduce evidence. The plaintiff introduced evidence, and the District Court entered judgment affirming the surcharge. This court affirmed the judgment of the District Court, and the judgment against respondent has become final. McGreevy v. Bremers, 199 Neb. 448, 259 N.W.2d 477.
It is evident that respondent has violated the disciplinary rules of the Code of Professional Responsibility. He has engaged in conduct involving dishonesty, fraud, deceit, *197 and misrepresentation; in conduct prejudicial to the administration of justice; and conduct adversely reflecting on his fitness to practice law. Respondent has failed to assist in maintaining the integrity and competence of the legal profession; neglected legal matters entrusted to him; and failed to keep funds entrusted to him separate and apart from his own. He has failed to properly account for such funds and to promptly pay over and deliver them, and has converted them, at least in part, to his own uses.
An attorney may be subjected to disciplinary action for conduct outside the practice of law or the representation of clients, and for which no criminal prosecution has been instituted or conviction had, even though such conduct might be found to have been illegal. State ex rel. Nebraska State Bar Ass'n v. Ledwith, 197 Neb. 572, 250 N.W.2d 230.
Violation of any of the ethical standards relating to the practice of law, or any conduct of an attorney in his professional capacity which tends to bring reproach upon the courts or the legal profession, constitute grounds for suspension or disbarment. State ex rel. Nebraska State Bar Ass'n v. Strom, 189 Neb. 146, 201 N.W.2d 391.
A restitution of funds wrongfully converted by a lawyer, after he is faced with legal accountability, is not an exoneration of his professional misconduct. State ex rel. Nebraska State Bar Ass'n v. Conover, 166 Neb. 132, 88 N.W.2d 135.
A duty rests on the courts to maintain the integrity of the legal profession by disbarring or suspending attorneys who indulge in practices constituting a fraud on the courts, or which tend to corrupt and defeat the administration of justice. State ex rel. Nebraska State Bar Ass'n v. Jensen, 171 Neb. 1, 105 N.W.2d 459.
This court has consistently held that failure to account for or conversion by a lawyer of trust funds in his possession requires disbarment. It is therefore adjudged that respondent be disbarred.
JUDGMENT OF DISBARMENT.
BRODKEY, J., not participating.