285 N.W.2d 105 (1979)
204 Neb. 692
STATE of Nebraska ex rel. NEBRASKA STATE BAR ASSOCIATION, Realtor,
v.
Dean E. ERICKSON, Respondent.
No. 42304.
Supreme Court of Nebraska.
November 6, 1979.
Paul L. Douglas, Atty. Gen. and C. C. Sheldon, Asst. Atty. Gen., Lincoln, for relator.
Dean E. Erickson, pro se.
*106 Heard before KRIVOSHA, C. J., and BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE and HASTINGS, JJ.
HASTINGS, Justice.
This is a disciplinary proceeding brought against Dean E. Erickson, a practicing member of the Nebraska State Bar Association. Following hearings held before the Committee on Inquiry of the Third Judicial District and the Advisory Committee, formal charges against respondent were filed in the Supreme Court of Nebraska on September 1, 1978. This court then appointed a referee to hear the matter, who held a hearing on the charges. The evidence adduced at that hearing consisted of the testimony presented before the Committee on Inquiry of the Third Judicial District, the files and records of the Counsel for Discipline, and testimony of the respondent. The referee filed his report in this court on December 26, 1978, recommending a 6-month suspension of respondent's license to practice law. No exceptions were filed to the referee's report, and on January 29, 1979, the relator filed its motion for final judgment on the report of the referee. However, the motion was overruled. The matter was briefed, argued, and submitted to the court.
The formal charges as filed in this matter consisted of counts I, II, and III involving, respectively, complaints by Mary Glenn and two complaints of Ben Foos, with a conclusionary allegation that the actions of the respondent as set forth in the various counts were in violation of the attorney's oath of office provided for by section 7-104, R.R.S.1943, and in violation of the following Canons and Disciplinary Rules of the Code of Professional Responsibility: Canon 1, DR 1-102(A)(1)(5); Canon 6, DR 6-101(A)(2)(3); and Canon 7, DR 7-101(A)(1), (2), (3). Additionally, a fourth count was added by stipulation of the parties at the hearing before the referee held on November 30, 1978. This related to a suit against James R. Sutton. By agreement of the parties, the transcript from that case, filed in this court as case No. 41627, was received in evidence and both parties waived the necessity of formal amendment of the complaint.
Count I involved a suit filed in the municipal court of Lincoln by Gamble-Robinson Co., a food wholesaler, against Mary Glenn for various sales and deliveries of merchandise. The suit alleged a balance due of $1,274.03. The answer filed by respondent on behalf of Mrs. Glenn claimed that the debt complained of was in fact the debt of Larry Christianson. A motion to set for trial was filed by the plaintiff. Notice of the time of hearing that motion was served on respondent. On the date set for hearing the motion was sustained without argument, and the case was set for trial on March 28, 1977. The respondent failed to notify Mrs. Glenn of the trial and as a consequence neither of them appeared and trial proceeded without them, resulting in a judgment in favor of plaintiff in the amount of $1,274.03. Mrs. Glenn first learned that judgment had been taken against her when her bank account was garnished as a result of summons issued April 6, 1977. Respondent did file a motion to set aside the judgment, which was set for hearing on May 2, 1977. However, he did not advise Mrs. Glenn and it was plaintiff's attorney who told her what day the motion was set for hearing. She appeared in court but respondent failed to appear. The court found the judgment entered was after trial rather than by default, so the motion was overruled. Mrs. Glenn did admit she had guaranteed the first delivery so did in fact owe approximately $200 of the total judgment, but had a defense to the remainder. She stated she had heard nothing at all from respondent since before the judgment was entered.
During the course of the hearing before the referee, in explanation of his actions in the Glenn case as well as the other matters, respondent stated that in April of 1977 he was "committed, somewhat voluntarily" to the chemical dependency unit of Lincoln General Hospital as an alcoholic, where he remained until June 9, 1977. However, when it was pointed out to him that his failure to appear in court in the Glenn matter predated his hospitalization, he simply *107 stated he had no recollection as to what might have occurred that accounted for his failure to appear. He also admitted he had not talked to Mrs. Glenn since his hospitalization and had not attempted to contact her, but suggested he was not certain that the results would have been any different had he appeared. However, he said he did feel obligated to recompense her for whatever her loss might have been due to his failure to appear in court. On June 1, 1977, respondent had written a letter to the then Counsel for Discipline in which he said: "In regard to the letter of Mary Ellen Glenn I will accept responsibility for any improper loss. I would like to discuss this matter in person with you and her upon my release." According to Mr. Gushard, the Counsel for Discipline, respondent talked to him in July of 1977, and said he had been drinking quite heavily during the early spring of 1977 and undoubtedly this had something to do with his loss of memory in connection with the missed hearing. He repeated his intention to contact Mary Glenn within the next few days to make arrangements to reimburse her for any loss. He was reminded again by Mr. Gushard on several occasions and each time he promised to make arrangements for reimbursement, but still had not done so.
Count II refers to a lawsuit in which respondent represented Benjamin Foos as to a claim made against him in the county court of Hall County by Benjamin & Associates, Inc., for $1,045.10 for alleged services rendered. This was filed February 15, 1977, following which, and after filing a special appearance, respondent filed a general denial on behalf of defendant. The case was set for trial on May 26, 1977, and a notice of hearing was sent to respondent by the court. Respondent failed to notify his client of the trial date and failed to appear himself. Judgment, including attorney's fees and costs, was entered in the amount of $1,352.08. Mr. Foos was not aware of the trial or the fact that a judgment had been entered against him until June or July of that same year when he was contacted by the sheriff. When questioned by his client as to why he didn't appear at the trial, respondent simply replied, "Oh, it slipped my mind." Mr. Foos felt that he had a meritorious defense to that lawsuit because, according to him, the agreement with the plaintiff was that their services would be of a contingent nature, i. e., if the project for which plaintiff had drawn plans went through, they would get a percentage of the total cost of the overall job. Respondent's response to the complaint of Mr. Foos in this particular case is that Foos never denied the obligation represented by that lawsuit. He gave no explanation for his failure to act which, it can also be assumed, was because it was during the time he was hospitalized.
The case in count III was a suit filed by the respondent on behalf of Mr. Foos against the Hensons in the county court of Merrick County, seeking recovery of $730 arising out of the lease of a house to defendants. The attorney for the defendants Hensons, filed a motion to make more definite and certain, which was noticed for hearing on March 29, 1977, at which time respondent failed to appear. The court sustained the motion and ordered Mr. Foos to amend his petition by April 20. On May 4, defendants filed a motion to dismiss for the reason that plaintiff had failed to comply with the previous order of court. This was set for hearing on May 20 and respondent was properly noticed. In the meantime, although respondent did not appear at the hearing on the motion to dismiss, an amended petition was filed on behalf of the plaintiff as of that same date. However, the court found that not only was the amended petition filed out of time but it failed to comply with the court's previous order, and as a result plaintiff's petition and amended petition were ordered dismissed.
Mr. Foos in his testimony before the Committee on Inquiry stated he was not exactly sure whether or not he could have collected any money from the Hensons even if he had obtained a judgment. He further testified that on more than one occasion he asked respondent when the trial was to be had and was told he would be informed. However, the next information he received *108 was when he happened to be in Central City and went into the court to inquire and was told the matter had come up and that the case had been dismissed. According to the Counsel for Discipline, respondent indicated he wasn't sure whether he received the various notices of hearings, that he probably had, and that the dates involved would have been during the time he was in the hospital. Mr. Gushard then stated the respondent indicated to him he was aware of the various hearings and that he made no attempt to contact Mr. Foos, the court, or the attorneys, and offered no explanation as to why he had not.
Finally, as to the Sutton matter, the defendant, Dr. James R. Sutton, was sued in the District Court for Douglas County in the amount of $7,500 for alleged fraud and misrepresentation. This was on March 4, 1976. The case is Vlcek v. Sutton, 201 Neb. 555, 270 N.W.2d 906 (1978). The facts as set forth in the published opinion indicate the case was called for trial before the jury panel of January 1977, at which time jury trial was waived, and the case was set for trial to the court on March 28, 1977. Plaintiff and his counsel appeared at that time but respondent, representing defendant, informed the court he was ill and requested the matter be reset. Accordingly, the case was rescheduled for April 28, 1977, when plaintiff and his counsel again appeared but defendant and respondent did not. The court reset the case for trial on May 6, 1977. Again, both plaintiff and his counsel appeared ready for trial but both defendant and respondent were absent. The matter was once more reset for trial at 9:30 a. m., May 25, 1977, at which time plaintiff and his attorney appeared, but neither defendant nor respondent were present. However, at approximately 10:15 a. m., defendant appeared by himself and was informed by the court that the matter would proceed to trial. The case was tried and resulted in judgment in favor of plaintiff in the amount of $6,500. The journal entry was signed on June 21, 1977. In each instance respondent had received notice of the various settings.
Respondent filed an affidavit on June 30, 1977, to the effect that he had been in the hospital on May 25. This was attached to his motion for new trial found in the transcript which alleged that trial was had without defendant's counsel being present and the trial was held without due and proper notice since the original notice of hearing indicated trial would be had on May 27. It is true that the last notice of trial sent out by plaintiff's attorney indicated it would be held on May 27, but in the court's order of judgment of June 21, it recited that although the matter was originally set for May 27, it was immediately reset by the court on its own motion to May 25. Although no notice appears in the record, the court recited in its order that respondent had been notified of the various settings. The motion for new trial was overruled. The complaint as to this particular case was not made by Sutton but on the initiative of the relator itself, and consequently defendant in that case did not testify at any of the disciplinary proceedings.
It is respondent's position that Doctor Sutton had acknowledged to him he was indebted to Vlcek for some amount and that he had advised Sutton to take out bankruptcy, which Sutton refused. Respondent again claimed his mail was not coming directly to him during the period of time he was in the hospital and therefore he was not aware of the trial until after it had happened.
Respondent questions generally whether he ever received some of the various notices, although the record is clear that in each instance they were mailed to him at his correct address. Upon further questioning he admitted in most cases he probably did receive the notices, but stated because of his heavy drinking and his hospitalization he does not have a very good memory. He also stated that he practices without secretarial help or the aid of cocounsel, and during the time of his hospital confinement his wife and daughter, who had access to his office during that time, brought him the mail at their convenience and at infrequent intervals. Also, he said he was discouraged *109 by his counselor from conducting any business while he was at the hospital, and his access to a telephone was limited. In further defense to the Merrick County action, he stated he had refiled the case and it was currently still open, which he claimed would indicate a lack of prejudice to Mr. Foos on that matter. Respondent stated hopefully he has overcome the alcohol problem, although admitted he has had several minor slips but is attempting to remain an abstainer. As far as making any changes in the organization of his office so as to set up a docket control or anything like that, he merely said he felt he has been keeping a better record and paying more attention to dates when legal papers should be filed.
The referee found the respondent was guilty of misconduct as to all four of the matters in litigation in that he failed to act competently by neglecting a legal matter entrusted to him, DR 6-101(A)(3); that he failed to carry out the terms of his employment to use all reasonably available means to seek the lawful objectives of his client, in violation of DR 7-101(A)(1); and that he violated a disciplinary rule contrary to DR 1-102(A)(1).
From our review of the record, there is no question but what these findings are supported by a clear preponderance of the evidence so that we are satisfied to a reasonable certainty that those particular charges are true. State ex rel. Nebraska State Bar Assn. v. Hollstein, 202 Neb. 40, 274 N.W.2d 508 (1979). As stated in that case: "In a proceeding for the disbarment of an attorney at law, the presumption of innocence applies, and the charge made against him must be established by a clear preponderance of the evidence. * * *
"The evidence adduced in a disciplinary proceeding is reviewed de novo in this court to determine if discipline should be imposed, and, if it should, the extent thereof."
In a disciplinary proceeding the presumption of innocence applies and the charges against the attorney must be established by a clear preponderance of the evidence so that we are satisfied to a reasonable certainty that they are true. State ex rel. Nebraska State Bar Assn. v. Hollstein, supra. The evidence does establish by these standards the particular violations found by the referee. In addition, it is apparent that, as also charged, respondent violated DR 1-102(A)(5) by engaging in conduct prejudicial to the administration of justice; DR 7-101(A)(2) in failing to carry out a contract of professional employment; and DR 7-101(A)(3) by prejudicing his client during the course of the professional relationship.
To determine whether and to what extent discipline should be imposed, it is necessary for this court to review the evidence de novo. State ex rel. Nebraska State Bar Assn. v. Hollstein, supra. In making this determination we must consider the nature of the offense, the need for deterrence of others, maintenance of the reputation of the bar as a whole, protection of the public, the attitude of the offender generally, and his present or future fitness to continue in the practice of law. State ex rel. Nebraska State Bar Assn. v. Cook, 194 Neb. 364, 232 N.W.2d 120 (1975).
At the outset it should be observed that respondent assigns alcoholism as the primary source of his problems and, to a lesser extent, the absence of clerical or professional assistance. Both are the result of voluntary action on the part of respondent and afford no justification for his conduct. The monetary loss which he has caused his clients is difficult if not impossible to determine, but certainly they have been deprived of their day in court. Their resultant attitude toward the legal profession can do nothing but damage the reputation of the bar as a whole.
It is respondent's attitude which is one of the most disturbing factors in this case. The fact that he arbitrarily determined that his clients had suffered no loss or prejudice has been referred to earlier in this opinion. Particularly, he stated to the referee: "My personal feeling in regard to Mr. Foos is that I am not, I do not feel in any way obligated to him. And in fact, subsequent *110 to the letter from Mr. Foos I, or just prior to his contacting me in the hospital, I'm not sure of the exact dates, I had, for the first time, rendered statements to Mr. Foos on a number of these matters. I had rendered statements to him prior to that time on other matters which were still unpaid. But my feeling is that Mr. Foos had put me into the same category as the other creditors, namely that he wished to beat it in some way, * * *." Also, although the Committee on Inquiry did not see fit to make a formal charge in this regard, there is evidence that respondent continued to hold himself out as a certified public accountant as late as August of 1976, by furnishing a balance sheet to Benjamin Foos on his CPA stationery when in fact, according to Mr. Gushard, he had given up his license as long ago as 1969.
Finally, in response to a question by the referee as to why he had not attended the hearings of the Committee on Inquiry held on March 30, 1978, and June 14, 1978, 1 year after his period of hospitalization, he replied: "I believe the only reason that I did not appear at those hearings was the fact that I had not received notice of the hearing or the continuance, or whatever that subsequent hearing was. * * * Had I attended I think that some of the matters that were brought out this morning about the two parties involved would have been a [sic] made a matter of record. And I think that especially as to Mr. Foos, the committee would have realized that there was no pecuniary loss to Mr. Foos." The truth of the matter is that a notice of the first hearing was served on respondent by certified mail, sent to his correct business address. It was receipted for by a Mr. Wissen, who officed across the hall from respondent. Mr. Gushard verified with Mr. Wissen that he had delivered the notice to respondent, and respondent himself acknowledged to Mr. Gushard that he had in fact remembered being given the notice and "he was busy at the time, just leaving the office, and he had apparently gotten the letter and put it in his desk drawer and forgot all about it, without opening it." Mr. Barlow, chairman of the Committee on Inquiry, Third Judicial District, by his testimony at the hearing on June 14, 1978, related that respondent had acknowledged receiving the written notice as well as a recorded telephonic notice of the first hearing, but had not listened to his messages until sometime after that date. Mr. Barlow also caused a typed copy of all testimony from the first hearing to be sent to respondent and advised him to read it and to make any reply in writing by May 1, including any request to reopen the hearing. He again tried, by telephone and by leaving recorded messages, to reach respondent, and finally by letter extended the deadline to reply to the committee to May 22. Respondent failed to reply until May 23, at which time he called Mr. Barlow and a June 2 date was scheduled and confirmed by Mr. Barlow's letter of May 24, but respondent failed to reply.
Respondent has made no significant change in his office procedure since 1977, which would tend to correct the obvious inadequacies of his docket control. He stated in oral argument that he would pay Mrs. Glenn $1,100 to cover her loss, but has been unable to do so as yet. Although he suggests he has made attempts to overcome his problem with alcohol, for which he should be commended, he admitted during oral arguments that he had experienced several "slips," the latest having been when notified of the date of hearing in this court. It is obvious that unless this problem is controlled he is not competent to continue the practice of law. Although the acts here were of an entirely different nature than those in State ex rel. Nebraska State Bar Assn. v. Cook, 194 Neb. 364, 232 N.W.2d 120 (1975), the language used in that opinion is nevertheless pertinent here: "The nature of the acts here do, however, go to the heart of the administration of justice." Complete disregard of a client's interests affords him no justice at all. However, contrary to the language of State ex. rel Nebraska State Bar Assn. v. Cook, supra, we are not persuaded that "there is no likelihood of repetition of this * * * conduct."
*111 Under the circumstances reflected in the record here, the recommended period of suspension is inadequate. We find respondent should be suspended from the practice of law for a period of 1 year from and after December 1, 1979. If, at the end of 1 year from the effective date of his suspension, respondent makes an affirmative showing sufficient to satisfy this court that he has successfully controlled his problem of alcoholism, and is prepared to institute office procedures designed to furnish him adequate docket control, as to both of which he can ask for and obtain help from either his local or state bar association; has arrived at a satisfactory settlement of the loss to Mrs. Glenn, as he outlined in his oral argument; has not engaged in the practice of law in this or any jurisdiction or engaged in any conduct which would subject him to discipline under the disciplinary rules if he were engaged in the practice of law, and will not do so in the future, then he will be reinstated and allowed to engage in the practice of law. However, upon failure to make such showing, then the suspension herein provided for is to become permanent. All costs of this proceeding are to be taxed to respondent.
JUDGMENT OF SUSPENSION.