STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR
ASSOCIATION, RELATOR, v. DONALD R. HAYS,
RESPONDENT.
322 N.W.2d 822

Filed August 6, 1982. No. 82-235.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, HASTINGS, and CAPORALE, JJ.

PER CURIAM.

This is a disciplinary proceeding against the respondent, Donald R. Hays, who was admitted to practice law in this state on June 24, 1966.

Formal charges were filed against the respondent on March 31, 1982. The charges, inter alia, allege that respondent violated DR 1-102 in that he engaged in misrepresentation, fraud, dishonesty, and conduct prejudicial to the administration of justice; violated DR 7-101 by intentionally failing to carry out a contract of employment for professional services; and violated DR 9-102 by failing to segregate his client's funds from his own, and by failing to promptly pay to the client funds to which the client was entitled. Notice of the filing of charges sent by certified mail to respondent's last-known address was returned as unclaimed. Five subsequent efforts by the sheriff of Lancaster County to serve the charges proved unsuccessful. Thereafter, service was had by publication. Answer day was June 1, 1982. No answer has been filed.

The Code of Professional Responsibility provides in pertinent part:

"DR 1-102. Misconduct. A. A lawyer shall not: 1. Violate a Disciplinary Rule. . . . 4. Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. 5. Engage in conduct that is prejudicial to the administration of justice."

"DR 7-101. Representing a Client Zealously. A. A lawyer shall not intentionally: . . . 2. Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under . . . ."

"DR 9-102. Preserving Identity of Funds and Property of a Client. A. All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows: 1. Funds reasonably sufficient to pay bank charges may be deposited therein. 2. Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved. B. A lawyer shall: 1. Promptly notify a client of the receipt of his funds, securities, or other properties. 2. Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable. 3. Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them. 4. Promptly pay or deliver to the client as request-

ed by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.''

The record made before the First Judicial Committee on Inquiry reveals that on or about May 30, 1980, Ilene Kreinbrook retained the respondent to handle the dissolution of her marriage. During the course of that action she discovered $12,000 in cash in her basement which, at respondent's request, she brought to him. He was to deposit the funds in a bank for Mrs. Kreinbrook. The Kreinbrooks' marriage was dissolved on or about December 18, 1980, at which time Mrs. Kreinbrook was awarded $6,139.08 of the funds; one-half of the $12,000 plus the purported accrued interest. At respondent's suggestion she allowed him to retain her funds in order that they might ''get together and invest it in stocks and bonds and stuff.'' It was Mrs. Kreinbrook's understanding that respondent would hold the money in trust for her. As she began to ask for distributions she experienced difficulty both in contacting respondent and in getting money from him. Payments, when made, were by checks drawn on a regular account of the respondent, not on a trust account. Upon receiving an insufficient fund check Mrs. Kreinbrook called Counsel for Discipline and, at his suggestion, wrote to the respondent, discharging him as her attorney and asking for an accounting of and return of her funds. After retaining another attorney she did receive $3,600 which, she testified, when combined with the other distributions to her approximated but did not quite equal the $6,139.08. However, her attorney wrote the Nebraska State Bar Association that full restitution had been made to his client.

The record further reveals that on or about April 3, 1981, John Jeffres was sentenced to jail for a period of 4 months for failing to pay court-ordered child support. While serving that sentence, Jeffres

contacted his mother. He asked her to send $500 to respondent on the basis that respondent had told him that he, respondent, had talked with a judge other than the one who had sentenced Jeffres and thought that by paying an additional $500 on the child support arrearage there was a good chance Jeffres would be released in 2 months instead of having to serve the full 4-month sentence. Jeffres' mother paid $500 to respondent for the purpose of applying it on Jeffres' child support arrearages. The $500 was not applied by respondent to the child support arrearages. Jeffres served his full 4-month sentence. After a number of requests, during which time respondent stated variously that the check had been sent or would be sent to Mrs. Jeffres, the money was ultimately returned to her by respondent's attorney.

There can be no doubt that respondent violated DR 1-102 and DR 9-102. In the Kreinbrook matter he clearly failed to segregate his client's money from his own; in both the Kreinbrook and Jeffres matters he failed to promptly pay or deliver, as requested, funds belonging to the clients. Further, the neglect of respondent to pay over money given to him to apply on past-due child support violated DR 1-102 by engaging in dishonest conduct as to his client and in conduct prejudicial to the administration of justice. Moreover, he failed to carry out a contract of employment in that regard and thus violated DR 7-101. See, *State ex rel. Nebraska State Bar Assn. v. Bremers,* 200 Neb. 481, 264 N.W.2d 194 (1978); *State ex rel. Nebraska State Bar Assn. v. Blanchard,* 179 Neb. 452, 138 N.W.2d 804 (1965).

Respondent's conduct warrants disbarment under the doctrines announced in the cited cases. Nor is the restitution of funds wrongfully converted by a lawyer, after he is faced with legal accountability, an exoneration of his professional misconduct. *State ex rel. Nebraska State Bar Assn. v. Ledwith,* 197 Neb. 572, 250 N.W.2d 230 (1977).

The respondent is disbarred.

JUDGMENT OF DISBARMENT.