322 N.W.2d 794 (1982)
212 Neb. 379
STATE of Nebraska ex rel. NEBRASKA STATE BAR ASSOCIATION, Relator,
v.
Donald E. LEONARD, Respondent.
No. 44253.
Supreme Court of Nebraska.
August 6, 1982.
*795 Paul L. Douglas, Atty. Gen., and Mel Kammerlohr, Asst. Atty. Gen., Lincoln, for relator.
Edward F. Carter, Jr., and Barney, Carter & Johnson, P. C., Lincoln, for respondent.
Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, HASTINGS, and CAPORALE, JJ., and BRODKEY, J., Retired.
PER CURIAM.
This is a disciplinary proceeding against Donald E. Leonard, who was admitted to practice in this state on June 24, 1960. The charges relate to conduct other than the practice of law.
Formal charges against the respondent Leonard were filed in this court on April 23, 1981, by the Committee on Inquiry of the Third Judicial District. The formal charges allege that on August 23, 1979, the respondent pleaded guilty to an information filed in the U.S. District Court for the District of Colorado charging a violation of Title 20, U.S. Code § 1087-4(c) (1976), "in that DONALD E. LEONARD failed to disclose to Union Bank and Trust Company that Labor Finance Industrial Bank had induced proprietary schools, i.e., Continental Commercial College, Educational Career Systems, Elba Systems Corporation, Wyoming Technical Institute, Arizona Automotive Institute, and persons connected therewith, not named as defendants herein, to make unlawful payments as a precondition to fund Federally Insured Student Loans, utilized by the students of said proprietary schools"; that on September 21, 1979, the respondent was permitted to withdraw his plea of guilty and enter a plea of nolo contendere and was thereupon sentenced to 60 days' incarceration and fined $1,000 and costs; and that the actions of the respondent constitute a violation of his oath of office as an attorney and violated Canon I, DR 1-102(A)(1), (3), (4), and (6) of the Code of Professional Responsibility.
Canon I of the Code of Professional Responsibility provides: "A Lawyer Should Assist in Maintaining the Integrity and Competence of the Legal Profession." DR 1-102(A)(1), (3), (4), and (6) provides: "A lawyer shall not: 1. Violate a Disciplinary Rule.... 3. Engage in illegal conduct involving moral turpitude. 4. Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.... 6. Engage in any other conduct that adversely reflects on his fitness to practice law."
The respondent's answer admitted only that he had been admitted to practice on June 24, 1960, and that an information against him had been filed in the U.S. District Court for the District of Colorado.
Pursuant to the rules of this court, a referee was appointed and an evidentiary hearing held on October 29, 1981. The referee found that § 1087-4(c) of the U.S. Code did not become effective until October 1, 1976, and could not have been violated by the respondent during the period May 14 to October 1, 1976, as alleged in the information filed in the federal court; that the information charged a violation of an ex post facto law; and that respondent's plea was a nullity and of no legal consequence. The referee recommended that the formal charges be remanded to the Committee on Inquiry for reconsideration.
Both the relator and the respondent filed exceptions to the report of the referee. The matter was then set for argument and has been submitted to the court.
Generally, a judgment of conviction of a felony or misdemeanor involving moral turpitude rendered upon a plea of nolo contendere is conclusive upon a respondent lawyer in a disciplinary proceeding, and is sufficient to authorize the court to impose discipline. State ex rel. Nebraska *796 State Bar Assn. v. Tibbels, 167 Neb. 247, 92 N.W.2d 546 (1958). It is the conviction of a crime involving moral turpitude, and not the plea to the charged offense, that warrants disciplinary action.
There can be no doubt that the respondent violated Canon I and Disciplinary Rule 1-102 if there was a factual basis for the charges against him.
The evidence before the referee shows that the prosecution in federal court arose out of the respondent's operation of a corporation known as "Medsa," which was owned by the respondent. Medsa owned or controlled an industrial bank in Colorado known as Labor Finance Industrial Bank (LFIB) which made loans to students under the Federally Insured Student Loan program. Medsa also owned or controlled several other corporations such as Systech of Colorado, Inc., Educational Methods, Incorporated, and K-Sette Corp., which were engaged in providing services to educational institutions. It was the contention of the government that loans were made available to students of educational institutions in accordance with an arrangement whereby the educational institutions would purchase services from the other corporations, and that such an arrangement violated a regulation prohibiting the payment of "points, premiums or additional interest of any kind" as an inducement to make student loans.
In 1976 LFIB sold its portfolio of student loans to Union Bank and Trust Company. The information filed in federal court alleged that the respondent had failed to disclose to Union Bank that LFIB had induced certain schools to make unlawful payments as a precondition to the funding of student loans. Union Bank makes no contention that the respondent failed to disclose material facts in regard to the transaction.
On the same day that the respondent entered his plea of guilty to the information filed against him, he, as chairman of the board of LFIB and president of Medsa, entered pleas of guilty on behalf of Medsa and LFIB to an information charging that the corporations, operated by the respondent, had fraudulently required certain educational institutions "to pay kickbacks" as a precondition to the funding of student loans.
The fact that the federal statute, which the respondent was charged with having violated, was an ex post facto law, is not controlling in this proceeding for several reasons. It is the respondent's conduct or "actions" which is in issue rather than whether he was technically guilty of the crime charged. An attorney may be subjected to disciplinary action for conduct outside the practice of law for which no criminal prosecution has been instituted or conviction had. State ex rel. Nebraska State Bar Assn. v. Bremers, 200 Neb. 481, 264 N.W.2d 194 (1978).
A federal regulation which was in effect during the time in question provided as follows: "No points, premiums or additional interest of any kind may be paid to any eligible lender in order to secure funds for making loans or to induce such a lender to make loans to the students of a particular institution or any particular category of students and, except in circumstances approved by the Commissioner, notes (or any interest in notes) evidencing loans made by educational institutions shall not be sold or otherwise transferred at discount." 45 C.F.R. 177.6(e) (1970). The evidence before the referee shows that the respondent was familiar with this regulation, and in 1971 or 1972 sought legal advice as to whether the regulation was enforceable.
Although only those matters which are specifically charged in the complaint in a disbarment proceeding can be considered, a disciplinary proceeding is not a lawsuit with formalities of pleading, nor can technicalities be invoked to defeat the charges where undisputed facts show conduct which is ethically wrong. State ex rel. Nebraska State Bar Assn. v. Jensen, 171 Neb. 1, 105 N.W.2d 459 (1960).
The fact that § 1087-4(c) was not effective until October 1, 1976, was well known to the respondent, the U.S. attorney, and *797 the federal court at the time the respondent entered his plea on August 23, 1979. The evidence before the referee establishes that a federal grand jury had been conducting an investigation into the practices of LFIB in regard to student loans, and the respondent agreed to a plea of guilty to the misdemeanor charge in return for an agreement by the U.S. attorney to not present to the grand jury a "RICO" indictment against the respondent which contained 22 counts and alleged "racketeer influenced and corrupt organizations" charges.
While the record before us is not as complete as it might be, we conclude that it is sufficient for the purpose of the charges made against the respondent and establishes by a clear preponderance of the evidence that he was guilty of violating Canon I, DR 1-102(A)(1), (3), (4), and (6) of the Code of Professional Responsibility.
There are mitigating circumstances shown in the record which should be considered in determining what discipline should be imposed. As previously mentioned, Union Bank makes no contention that the respondent withheld any material information from it. The record further discloses that, except for the pleas to the information filed in the federal court, the respondent has at all times maintained that none of the transactions involved were illegal.
We conclude that the respondent should be suspended from the practice of law for a period of 1 year. All costs are taxed to the respondent.
JUDGMENT OF SUSPENSION.
CLINTON, J., participating on briefs.