[No. C.D. 4183.   En Banc.   January 13, 1983.]

*In the Matter of the Disciplinary Proceeding*
*Against* JACK M. SAWYER, *an*
*Attorney at Law.*

*Robert T. Farrell,* for Bar Association.

UTTER, J.—This attorney disciplinary proceeding brings before us another instance of violation of the trust account

rules and misuse of client funds. As in our previous cases, we again emphasize the serious breach of fiduciary duty which such violations constitute and in this case adopt the bar association's recommendation of disbarment.

On June 25, 1980, the bar association served a formal complaint on respondent, Jack M. Sawyer. The complaint charged respondent with five separate counts of professional misconduct. Briefly summarized, they were:

1. The forgery of a client's endorsement on a draft made payable to her in settlement of her claim and the subsequent use of the funds for respondent's own personal and business purposes.

2. Failure to account to a client for funds received in settlement of the client's claim, failure to pay medical bills from those funds as promised to the client, and diversion of those funds for respondent's personal use.

3. Neglect of a legal matter by failing to appear for and oppose a motion for summary judgment made by opposing counsel. The motion was granted by the court.

4. Failure to comply with the prohibitions against commingling and the recordkeeping requirements of CPR DR 9-102 regarding the handling of client funds.

5. Failure to cooperate with the bar investigation regarding these violations.

On September 25, 1980, the complaint was amended to add a sixth count charging willful failure to comply with a state bar counsel subpoena.

Hearings were held on December 5, 1980 (on the sixth count) and February 20, 1981 (on the remaining counts). The hearing officer concluded that all of the charges were proven and recommended disbarment. The Disciplinary Board adopted the findings and recommendations of the hearing officer.

Respondent has not objected to the findings of the hearing officer; indeed, he has not even filed a brief with or appeared before this court. We must therefore presume the hearing officer's findings to be supported by the evidence. *See In re Gibson,* 90 Wn.2d 440, 441, 583 P.2d 633 (1978).

In any event, a review of the record shows ample supporting evidence.

■ While neglect of a legal matter is far from inconsequential misconduct (*see In re Johnson*, 94 Wn.2d 659, 662–63, 618 P.2d 1322 (1980)), violation of the rules governing trust account funds is even more serious. We have plainly stated that "failure to [observe trust account rules] leads to disbarment absent extraordinary mitigating circumstances." *In re Moynihan*, 97 Wn.2d 237, 238, 643 P.2d 439 (1982). The relationship between attorney and client is "one of the strongest fiduciary relationships known to the law." *In re Beakley*, 6 Wn.2d 410, 423, 107 P.2d 1097 (1940). To refrain from cheating his or her client by misusing entrusted funds is one of the most basic duties of a fiduciary.

In the case at bar, respondent violated the trust account rules in several independent instances. With respect to the first count of the complaint the hearing officer found not only that respondent had appropriated client funds for his personal use, but that he did so by forging his client's signature on a check made out to her in partial settlement of her claim. Respondent's misfeasance did not stop here, moreover, for he later agreed to a final settlement in the same matter which was not authorized and in fact actually *opposed* by the client. From the $16,000 paid pursuant to that settlement agreement, respondent then paid himself a $4,000 attorney's fee without informing his client.

■ Respondent contended at his hearings that the total amount of client funds which he retained, $7,890.40, was simply his attorney's fee. In light of the client's total recovery of $22,819.70 and other legal work respondent performed for her free of charge,[1] such a fee does seem reasonable; however, this does not excuse respondent's method of extracting it. *Cf. In re Kennedy*, 80 Wn.2d 222,

---

[1] In addition to the matter which he settled for his client, an action for personal injuries sustained in an automobile accident, respondent also assisted her with divorce proceedings and a sale of real property.

237, 492 P.2d 1364 (1972) (attorney may not counter client's misconduct by mishandling client funds). Moreover, the amount taken appears to have been decided unilaterally by respondent. He failed to even discuss his fee with his client and rejected her early efforts to ascertain what she should expect to pay. This failure in itself, while not rising to the level of professional misconduct, falls well short of preferred practice. *See* CPR EC 2–19 (fee arrangement should be clarified "[a]s soon as feasible" after employment and should usually be put in writing).

██ Before concluding that disbarment is appropriate discipline, we must consider whether there exist any mitigating circumstances. Even in cases of actual misuse of client funds, the presence of mitigating circumstances may justify discipline short of disbarment. *In re Salvesen,* 94 Wn.2d 73, 76, 614 P.2d 1264 (1980); *In re Kumbera,* 91 Wn.2d 401, 405, 588 P.2d 1167 (1979). Each case must be evaluated individually in light of its particular facts and circumstances. *Kumbera,* at 404.

In *In re Salvesen, supra,* we noted five mitigating factors: (1) the attorney's good reputation and prior unblemished record; (2) the fact that the attorney had consistently paid his clients the amounts due at the proper times; (3) the attorney's full cooperation with the bar investigation and admission of error; (4) the community support the attorney retained even after his misconduct became public knowledge; and (5) the Disciplinary Board's qualification of its disbarment recommendation. *Salvesen,* at 77–79. None of these factors is present in the instant case. In addition to the multiple violations found here, respondent has two prior censures on his record, both for misuse of trust accounts. He has not paid his client the amount due her, but claims it as an attorney's fee. In continuing to make this claim, respondent refuses to admit his error and the hearing officer's findings of willful failure to cooperate and willful failure to comply with a bar counsel subpoena indicate respondent has made little effort to cooperate with the bar investigation. While in fairness it should be noted that

respondent's failure to cooperate appears to have been due in part to a personality conflict with bar counsel, he certainly did not exhibit the cooperation found in *Salvesen.* Finally, there is no evidence in the present case of community support or any hesitation in the Disciplinary Board's recommendation of disbarment.

There is some suggestion in the record that respondent has an alcohol problem. This can be a very significant mitigating factor when the attorney has successfully sought and received treatment for his or her problem. *In re Kumbera, supra* at 405. In the present case, however, respondent has not even admitted the existence of a problem at the time of his transgressions,[2] let alone sought treatment.

In sum, respondent's violation of the trust account rules provides ample justification for disbarment as recommended by the Disciplinary Board. No circumstances of which we are aware justify leniency. We therefore need not consider further the circumstances of his additional misconduct. In light of our conclusion, we also award costs of $1,725.31.

Jack M. Sawyer is hereby disbarred. His name shall be stricken from the roll of attorneys in this state.

WILLIAMS, C.J., STAFFORD, BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

---

[2] Respondent did concede at his hearings that he had had an alcohol problem a number of years earlier; however, he denied that he had had any problem since that time.