STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, V. JAMES P. MILLER, RESPONDENT.

404 N.W.2d 40

Filed April 17, 1987.   No. 86-108.

Dennis G. Carlson, Counsel for Discipline, and Alison L. Larson, for relator.

John J. Reefe, Jr., for respondent.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

This is an original disciplinary proceeding against James P. Miller, an attorney admitted to practice in Nebraska. Pursuant to an application by the Committee on Inquiry of the Second Disciplinary District of the Nebraska State Bar Association, this court, on February 6, 1986, temporarily suspended Miller from practicing law in the State of Nebraska, see Neb. Ct. R. of Disc. 12 (rev. 1986), such suspension to continue until further order of this court. On April 16, 1986, the Committee on Inquiry held a hearing concerning the complaint against Miller and adopted formal charges against Miller, which charges were subsequently adopted by the Disciplinary Review Board. See Neb. Ct. R. of Disc. 9 (rev. 1986). The referee appointed by this court has filed a report containing findings and recommendations.

In 1970, Miller was admitted to practice in Nebraska and was elected Sarpy County public defender in 1980, an office which he held until his resignation on January 15, 1986, before this court's order of temporary suspension.

On July 14, 1982, Rosemary Mills accepted appointment as the personal representative of the estate of Stanley Mazur, deceased, and retained Miller to act as attorney for the personal representative. On October 22, 1982, Miller drew a check on the estate's account at Bell Federal Credit Union, in the amount of $19,486.38, payable to "Rosemary Mills, Administratrix of the estate of Stanley Mazur." Without Mills' permission, Miller endorsed the estate check "Rosemary Mills PR." Rather than depositing that check in a trust account, Miller deposited the check in his combined personal and business checking account and later wrote checks, reducing the balance of the account to $19.27 on December 1, 1982, but never paid the Stanley Mazur estate or any Mazur devisee anything from the proceeds realized by the estate check in question. Subsequently, without complaint concerning the deposit of the estate check in Miller's account, Miller borrowed funds and, by June of 1983, had paid

all Mazur devisees the amounts due them from the Stanley Mazur estate.

After a complaint by Miller's former associate, the Counsel for Discipline of the Nebraska State Bar Association commenced an investigation on November 16, 1985. Neither Mills, as personal representative of the Stanley Mazur estate, nor any Mazur devisee complained about Miller's conversion of estate funds.

At the hearing before the Committee on Inquiry, Miller admitted that he had endorsed the estate check with Rosemary Mills' name and deposited the estate check in his checking account for his own use. Miller did not contest the seriousness of his conduct. Throughout the time when Miller was acting as attorney for the personal representative, Miller extensively used alcohol and amphetamines, which affected his conduct as an attorney involved in the probate proceedings. The record does not disclose that the amphetamines were medically prescribed for any condition in Miller. At times Miller would suffer "blackouts" and would "become aware I was someplace and have no idea how I got there or what had happened in the intervening hour or two." However, as the result of his association with Alcoholics Anonymous, Miller stopped drinking alcohol and ceased using drugs in May 1983.

The formal charges alleged that Miller has violated his oath as an attorney, see Neb. Rev. Stat. § 7-104 (Reissue 1983), and certain provisions of the Code of Professional Responsibility, namely:

DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

(3) Engage in illegal conduct involving moral turpitude.

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

And:

DR 9-102 Preserving Identity of Funds and Property of a Client.

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

The referee found that Miller had violated an attorney's oath of office and the aforementioned provisions of the Code of Professional Responsibility, as charged, but recommended that:

Mr. Miller be suspended from the practice of law for a period of two years with credit given for the temporary suspension period. That prior to reinstatement of his license to practice, that [Miller]: 1) furnish independent third party proof of his continued active participation in Alcoholics Anonymous and abstinence from alcohol and drugs, 2) that he successfully complete courses at accredited educational institutions in Legal Ethics and basic accounting and at least one continuing education course in Law Office Management; and 3) that all costs of this action be taxed to [Miller].

Miller asserts that the 2-year suspension is an appropriate sanction and urges consideration of the following mitigating circumstances: (1) Restitution without any antecedent threat of action, discipline, or complaint against Miller; (2) absence of complaint from any client; (3) chemical dependence, now eliminated, at the time of the conduct in question; (4) cooperation with the Counsel for Discipline in disposing of the

charges, which are neither denied nor minimized by Miller; (5) a previously unblemished record as an attorney; (6) a good reputation among lawyers and nonlawyers, as evidenced by numerous letters; and (7) fidelity to this court's order of temporary suspension, entered in February 1986.

The Nebraska State Bar Association, as relator, has taken exception with the referee's report and contends that disbarment is the appropriate sanction for Miller's misconduct.

A proceeding to discipline a lawyer is a trial de novo on the record. *State ex rel. NSBA v. Kelly*, 221 Neb. 8, 374 N.W.2d 833 (1985); *State ex rel. NSBA v. Statmore*, 218 Neb. 138, 352 N.W.2d 875 (1984). In a disciplinary proceeding against an attorney, the basic issues are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances. *State ex rel. NSBA v. Kelly, supra; State ex rel. NSBA v. Statmore, supra.*

> To determine whether and to what extent discipline should be imposed, it is necessary that we consider the nature of the offense, the need for deterring others, the maintenance of the reputation of the bar as a whole, the protection of the public, the attitude of the offender generally, and his present or future fitness to continue in the practice of law.

*State ex rel. Nebraska State Bar Assn. v. McArthur*, 212 Neb. 815, 819, 326 N.W.2d 173, 175-76 (1982).

While we have previously held that conversion of a client's funds requires disbarment, *State ex rel. Nebraska State Bar Assn. v. McConnell*, 210 Neb. 98, 313 N.W.2d 241 (1981); *State ex rel. Nebraska State Bar Assn. v. Bremers*, 200 Neb. 481, 264 N.W.2d 194 (1978); *State ex rel. Nebraska State Bar Assn. v. Ledwith*, 197 Neb. 572, 250 N.W.2d 230 (1977), we have also held that "disbarment is inappropriate in the absence of specifically delineated injuries" to a client as the result of an attorney's misconduct. *Kelly, supra* at 16, 374 N.W.2d at 838; *McArthur, supra.* In addition, we have held that mitigating circumstances shown in the record should be considered in determining an appropriate discipline. *State ex rel. NSBA v. Matt*, 213 Neb. 123, 327 N.W.2d 622 (1982); *State ex rel. Nebraska State Bar Assn. v. Leonard*, 212 Neb. 379, 322

N.W.2d 794 (1982).

To determine what sanction is appropriate, each case justifying discipline of an attorney must be evaluated individually in the light of the particular facts and circumstances. *In re Sawyer*, 98 Wash. 2d 584, 656 P.2d 503 (1983). See, also, *In re Kumbera*, 91 Wash. 2d 401, 588 P.2d 1167 (1979).

Miller admittedly commingled his clients' funds and converted them to his own use. Commingling of a client's funds is an area of grave concern. *Kelly, supra; Statmore, supra.* Ordinarily, commingling and conversion of a client's funds by an attorney may warrant disbarment. *Bremers, supra; Ledwith, supra.* However, we must examine Miller's claim of mitigating circumstances to determine whether disbarment is the appropriate sanction in the present case. See, *Matt, supra; Leonard, supra.*

Miller made restitution of the converted funds more than 2 years prior to a complaint filed against him and without any threat of disciplinary action. "A restitution of funds wrongfully converted by a lawyer, after he is faced with legal accountability, is not an exoneration of his professional misconduct." *Bremers, supra* at 484, 264 N.W.2d at 197. See, also, *Kelly, supra; Statmore, supra.* While an attorney's restitution of a client's converted funds *prior* to being faced with accountability may not exonerate such misconduct, restitution prior to complaint or prospective accountability is a significant mitigating factor to be considered in determining an appropriate sanction for an attorney's conversion of a client's funds. See Annot., 95 A.L.R.3d 724 (1979). Such view of restitution will encourage an attorney to correct a wrong before damage is sustained by a client.

In *State ex rel. NSBA v. Kelly*, 221 Neb. 8, 374 N.W.2d 833 (1985), the attorney admitted his securing a forged endorsement for his client's bond receipt and depositing the $1,500 bond proceeds in his office account rather than a trust account. The balance in Kelly's office account was allowed to drop below $1,500. Kelly refunded to his client, but only after the client had retained another attorney to assist in collecting the bond proceeds. We found that disbarment of Kelly was

inappropriate in the absence of specific injury to his client, and concluded that the appropriate sanction was suspension of Kelly's license to practice law for a period of 1 year. See, also, *State ex rel. NSBA v. Tomek*, 214 Neb. 220, 333 N.W.2d 409 (1983) (1 year suspension for withdrawing $25,651.70 from estate without notice or authority, which funds from estate were repaid). As in this case, many of the attorney's problems in *Kelly* were the result of alcoholism, and we noted that Kelly had "taken positive steps to deal with his alcohol dependence." *Kelly, supra* at 16, 374 N.W.2d at 837.

In *State ex rel. Nebraska State Bar Assn. v. Erickson*, 204 Neb. 692, 285 N.W.2d 105 (1979), Erickson claimed alcoholism was the primary reason for his disregard and mishandling of his clients' interests. Although part of Erickson's neglect of pending lawsuits occurred during the several months in which he was hospitalized for chemical dependency, we found that the alcoholism did not justify Erickson's misconduct and that he was not competent to continue to practice law unless that condition was controlled. We imposed a 1-year suspension on Erickson, with the right of reinstatement upon affirmative showing that, among other things, he had successfully controlled his problem of alcoholism.

In *State ex rel. NSBA v. Matt, supra*, Matt was charged with assisting in the illegal purchase of a controlled substance (cocaine) and was suspended from the practice of law for 1 year. We noted as a mitigating circumstance the fact that Matt was no longer involved with drugs.

Miller acknowledges that he was misusing drugs and excessively using alcohol when he represented the personal representative of the Mazur estate. Excessive use of alcohol and drug abuse contributed to the conduct involved in the charges filed against Miller. While abuse of a substance, such as some form of drugs or chemical dependence, in no way justifies or totally excuses misconduct, the fact remains that Miller voluntarily sought treatment for his condition and has not used alcohol or drugs since May 1983. Miller's terminated use of alcohol and drugs is a significant mitigating factor affecting the appropriate sanction to be administered in this case. See, *In re Sawyer*, 98 Wash. 2d 584, 656 P.2d 503 (1983); *In re Kumbera*,

91 Wash. 2d 401, 588 P.2d 1167 (1979); Annot., 26 A.L.R.4th 995 (1983).

We also take into account the numerous and supportive letters submitted regarding Miller's good reputation in the community and his competence as a lawyer. See *State ex rel. Nebraska State Bar Assn. v. Richards*, 165 Neb. 80, 84 N.W.2d 136 (1957). In addition to those letters, mitigating factors shown on the record include the following facts: Miller has cooperated fully with the Counsel for Discipline; the misconduct charged was a single, isolated incident; and no client has complained against Miller.

Miller's violation of his oath of office as an attorney and his violation of the ethical standards governing the conduct of attorneys are serious matters. Although there has been no specific damage to a client, a mere reprimand would be too lenient, and disbarment too harsh a sanction under the circumstances. However, we must impose a disciplinary sanction to deter others from misconduct similar to Miller's and to maintain the reputation of the bar as a whole. Since Miller's conduct in rectifying the wrong does indicate some retained professional responsibility, we find that suspension from the practice of law is the appropriate sanction to be applied under the circumstances. We agree with the recommendation of the referee regarding Miller's suspension and the requirements for Miller's reinstatement to the practice of law in the State of Nebraska.

Therefore, we conclude that the respondent, James P. Miller, shall be suspended from the practice of law for a period of 2 years; provided, however, respondent shall receive credit for the time he has been temporarily suspended from the practice of law, that is, from February 6, 1986. At the conclusion of respondent's suspension and before respondent may be reinstated to the practice of law in this state, respondent shall (1) furnish independent third-party proof that respondent has continued active participation in Alcoholics Anonymous and maintained abstinence from alcohol and drugs; (2) successfully complete a course in legal ethics and a course in basic accounting, such courses to be successfully completed at an accredited educational institution; (3) complete a course in

continuing legal education in law office management; and (4) pay all costs of this action, which are hereby taxed to the respondent.

JUDGMENT OF SUSPENSION.