STATE, Plaintiff, v. STOVEKEN, Defendant.

*No. State 139. Argued May 8, 1975.—Decided June 3, 1975.*
(Also reported in 229 N. W. 2d 224.)

For the plaintiff there was a brief and oral argument by *Robert H. Bichler* of Racine.

For the defendant there was a brief and oral argument by *Donald D. Nelsen* of Madison.

PER CURIAM. On February 20, 1974, a complaint was filed and served on the defendant alleging unprofessional conduct in the management and use of his clients' trust account and calling for bar discipline because of such conduct.

The specific complaint against this attorney at law is that between December 29, 1971, and January 31, 1973, he issued 49 checks on his clients' trust account, all of which were refused payment by the bank due to lack of sufficient funds. Eleven of the checks were dishonored twice, and three checks were dishonored three times. The defendant admitted in his answer that the 49 checks were issued and refused payment by the bank.

At the hearing before the referee, held on July 15, 1974, the defendant identified the nature of the transactions involving the issuance of the not-sufficient-funds checks on the trust account, including: (1) Checks issued to pay for janitor work and, on one occasion, to advance money to the person performing janitorial service; (2) a check to a person putting up posters for a music festival sponsored by a client to ". . . take care of a personal emergency which he had at that time;" (3) a check to a restaurant owner ". . . to take care of a personal emergency . . . because he was buying an automobile; . . ." (4) a check to a free-lance investigator ". . . to be held as a security deposit for the purchase of an automobile; . . ." and (5) a check to a client from funds received by defendant from a disability insurer. Defendant's brother testified that he received two checks from the trust account for personal use with the promise that he would reimburse defendant the next day, which he did not do. A bookkeeper who did work for defendant testified that he received a check from the trust account as a personal loan, with his promise to repay defendant the next week, which he did not do.

On October 9, 1974, the referee filed his report and recommendation for a severe reprimand to be imposed by this court. He found that the defendant on at least four occasions exposed his trust account to loss by making loans for personal purposes from it. He found that defendant's practices caused at least one check, payable to a client and representing funds due such client in settlement of a claim against an insurance carrier, to be dishonored. The referee concluded that the defendant's acts constituted unprofessional conduct, finding that: "The consistent and repetitious overdrafts in defendant's trust account can only lead to the conclusion that defendant did not intend that his checks be paid at presentation or that he was gullible and duped time and again over a long period of time by the broken promises of his clients and associates." The referee

concluded that the defendant had (1) used his clients' funds for his own purpose; (2) used his trust account for purposes other than the benefit of the clients whose funds were deposited therein; and (3) issued numerous worthless checks drawn on his clients' trust account.

We deal here with the statutory requirement that an attorney in this state establish and maintain a clients' trust account, and his professional obligation to treat such separate account as a trust account for and on behalf of his clients. Sec. 256.293 (1), Stats., requires attorneys in this state, upon receipt of money belonging to a client, to ". . . promptly deposit his client's funds . . . in a bank account separate from his own account and clearly designated as 'Clients' Funds Account' or 'Trust Funds Account' . . ." The same section expressly provides that a member of the state bar ". . . shall not commingle the money or other property of a client with his own . . . ." Disciplinary Rule 9–102 of this court likewise requires that clients' funds be kept in a separate and identifiable trust account, with the guidelines accompanying Rule 9 providing: "Separation of the funds of a client from those of his lawyer not only serves to protect the client but also avoids even the appearance of impropriety, and therefore commingling of such funds should be avoided." (Ethical Consideration 9–5, Code of Professional Responsibility.) We need not quote further from statute or rule or discuss further their joint requirement that complete records be kept of such separate clients' funds, to make the obvious point that a clients' trust account is to be a fund maintained for the deposit of funds belonging to a client, and is not to be a personal account of an attorney available for personal use or loans to friends and acquaintances from moneys belonging to clients.

To see and keep in mind this sole and overriding purpose for having a clients' security fund is to render

irrelevant some of the issues disputed in this proceeding. The issue is not whether or not the defendant violated sec. 943.24, Stats., making it a misdemeanor to issue a worthless check intending that it not be paid. The referee made no finding as to such illegal intent to defraud the ones who cashed the not-sufficient-funds checks. Neither do we. But defendant's insistence that he intended or hoped, in each situation, that the check issued on the clients' trust account would be made good before it was presented to the bank for payment, even if completely accepted, does not reach the impropriety of his issuing checks drawn on his clients' trust account for personal use or loans to others. Whether the checks bounced or did not bounce is not the key question. Why checks for purposes unrelated to the clients' trust account were drawn on that account is the question to be answered.

If the defendant desires to indulge the hope that checks, worthless when drawn, would be somehow made good before they reached the bank, his personal bank account was available as the track on which his often unsuccessful races could have been run. No explanation is offered by defendant as to why he so repetitiously chose his clients' trust account for the issuance of personal and accommodation checks that he hoped would and could become good checks by the time they reached the bank. The only answer suggested in this record is that of the liquor store owner witness who had cashed one of the checks and who testified that he normally does not take a second-party check but that he accepted this one because it was drawn on an attorney's trust account. Whether or not this was the reason for using the clients' trust account for the issuance of the checks involved, the complete impropriety of the practice is apparent, both under the statute and under the profes-

sional obligations of a lawyer to his clients and their trust account.

The breach of professional obligation derives from the use of a separate bank account, required for the deposit of moneys belonging to clients, for purposes unrelated to the reason for the existence of such special account. The statute created by supreme court order gives as the designation for such clients' fund, the alternatives: "Clients' Funds Account" or "Trust Funds Account." Under either designation the trust nature of the separate bank account for clients' funds is clear. The attorney establishing and maintaining such separate trust account on behalf of his clients is, de facto at least, in the position of the trustee of a trust. He is by statute required to ". . . maintain and preserve for at least 6 years complete records pertaining to client's funds or assets received by him which are required to be distributed or segregated by sub. (1). . . ." (Sec. 256.293 (2), Stats.) Such separate and segregated trust account is not available for personal use by its trustee, nor for loans to friends and relatives of such trustee. The professional impropriety in the case before us is the repetitive use of the trust account for impermissible and improper purposes. Whether the checks bounced or were honored by the bank does not alter the impropriety of writing checks on a client's trust account for personal use or accommodation of nonclients. Whether the defendant intended or hoped that each such check would be made good before it was presented to the bank for payment does not alter the initial impropriety. We agree with the referee that the breach of professional duty, repeated as it was here, requires discipline and agree with the state that the appropriate discipline here is suspension of defendant's right to practice law, with the defendant to be required to pay the costs of these proceedings but not to exceed $500.

It is the order of this court that the defendant, Neil Stoveken, be suspended from the practice of law in this state for a period of one year from the entry of this order, and for such period thereafter as shall expire before his license to practice law is restored. Such restoration and reinstatement as a member of the state bar is conditioned upon (1) his paying the costs of these proceedings (not to exceed $500); (2) his petitioning for reinstatement under Rule 10, sec. 5, of the Rules and By-Laws of the State Bar of Wisconsin; (3) his appearance before the Board of State Bar Commissioners for examination as to his maintenance of professional standards, if reinstated, with a report and recommendation as to his reinstatement to be made to this court by such board; and (4) his satisfying this court, before being reinstated, both by his conduct from this time forward and by assurances given the court, that he will not, if reinstated, repeat or return to the course of conduct involved in the charges made in the complaint in this matter.