[No. S014282. Dec. 24, 1990.]

SALVADOR DIAZ BACA, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

---

---

**COUNSEL**

Salvador Diaz Baca, in pro. per., for Petitioner.

Diane C. Yu, Richard J. Zanassi, Truitt A. Richey, Jr., and James R. DiFrank for Respondent.

---

**OPINION**

**THE COURT.**—We review the recommendation of the Review Department of the State Bar Court of the State of California (review department) that Salvador Diaz Baca (Baca) be disbarred from the practice of law in California. Baca failed to respond to the notice to show cause and allowed his default to be entered. He did not appear at either the Hearing Department of the State Bar Court (hearing panel) or review department proceedings. In fact, Baca failed to act or respond in any manner whatsoever until the State Bar's recommendation of disbarment was filed with this court. Although Baca claims he lacked notice of the State Bar proceedings against him, the evidence does not support his contentions. We conclude the recommendation of the review department should be adopted.

### FACTS

Baca was admitted to the practice of law in California in 1977, and has been a member of the State Bar since that date.

The review department adopted the hearing panel's findings and added two conclusions of its own. The review department's recommendation of disbarment is based on three matters involving professional misconduct by Baca.

A. *The Harvey Matter.*

Baca was hired by Edward Harvey to represent him in an action for damages against the City of Compton. Baca was paid $120 for filing fees in January 1986. He did not deposit the money in his trust account; rather, he

put it in his desk drawer. Baca never filed an action and he did not return the $120. Despite Harvey's repeated attempts to call Baca, Baca failed to communicate with Harvey after March 1986. Harvey's action is now barred by the statute of limitations.

The hearing panel concluded that Baca violated his oath and duties as an attorney (Bus. & Prof. Code, §§ 6067 & 6103) and, by his failure to return the $120, violated Rules of Professional Conduct, former rules 2-111(A)(3)[1] (failure to return unearned fees; see now, rule 3-700) and 8-101(B)(4) (failure to promptly return to the client funds to which the client is entitled; see now, rule 4-100). The review department added a conclusion that Baca violated former rule 6-101(A)(2) (intentional failure to perform legal services competently; see now, rule 3-500). The hearing panel noted that no evidence had been presented to show that Baca misappropriated the $120 or failed to provide an accounting.

### B. *The Puerta Matter.*

Baca was hired to represent Hope Puerta in a workers' compensation matter. Puerta had previously been represented in the matter by a succession of three separate law firms. Each of the previous three law firms had filed attorney lien claims in the Puerta matter. On January 6, 1986, the Workers' Compensation Appeals Board (WCAB) referee approved a compromise and ordered $21,688.53 paid to Puerta, $4,711.47 paid to the insurance company because of previous overpayments of temporary benefits, and $3,600 in attorney fees payable as follows: $1,400 to Baca; $700 to Gordon, Edelstein, et al.; $750 to Spatafore and Wheeler; and $750 to Ronald Gould.[2]

By mistake, the workers' compensation insurance carrier, prior to the signing of the order, had forwarded the entire $3,600 for attorney fees to Baca who, on December 27, 1985, deposited the entire amount in his general account. In March 1986, the insurance company notified Baca of its

---

[1] All references to rules are to the State Bar Rules of Professional Conduct unless otherwise indicated. The present rules took effect on May 27, 1989, after the misconduct involved here. References to former rules are to those in effect when petitioner's conduct occurred.

[2] The hearing panel's finding states that "on December 12, 1985, a Compromise and Release, prepared by petitioner, was approved by the WCAB" awarding attorney fees in the amounts specified above. The WCAB file (of which judicial notice was taken) reflected that on December 12, 1985, defendant insurance company's attorney forwarded to the WCAB an "Order Approving Compromise And Release To Be Signed By Judge." The prepared order stated only that "Applicant's attorney requests a fee of $3,600." No order was signed until January 3, 1986, and although it specified attorney fees for four separate attorneys, it failed to order anything paid to Mrs. Puerta. An amended order was signed on January 6, 1986, specifying how the entire $30,000 compromise and release was to be paid.

mistake in paying him all the attorney fees and Baca promised to rectify the matter. He failed to forward any of the money to the other attorneys.

On April 16, 1986, the WCAB held a hearing on the attorney fee issue. Baca did not attend. On April 23, 1986, and on May 29, 1986, the WCAB ordered Baca to repay the $2,200 he owed to the other attorneys. Baca again failed to pay and the insurance company paid the three law firms and brought contempt proceedings against Baca.

A contempt citation was issued against Baca. At a hearing on November 14, 1986, Baca pleaded no contest and offered as a defense that it was "impossible" for him to pay at that time. Baca alleged that his law office had only recently (in November 1986) begun making a profit. The WCAB judge found Baca in contempt and fined him $350. Baca made restitution to the insurance company on December 19, 1986.

The hearing panel concluded that Baca's conduct in the Puerta matter violated Business and Professions Code sections 6068, subdivision (a) (duty to respect the law), 6068, subdivision (b) (duty to respect the courts), and 6103 (violation of duties). The hearing panel also found that Baca's deposit of the entire $3,600 check in his general account and his failure to promptly pay the three attorneys, after repeated requests, constituted the conversion of funds belonging to others and the commission of an act involving moral turpitude (Bus. & Prof. Code, § 6106). Finally, the hearing panel found that Baca disobeyed a lawful order of the WCAB and was guilty of contempt (in violation of Bus. & Prof. Code, §§ 6068, subd. (a), 6068, subd. (b) and 6103). ■ ■ ■ ■ The review department added a conclusion that Baca's conduct violated former rule 8-101(B)(4) (failure to promptly pay to a client moneys owed the client; see now, rule 4-100).[3]

C. *Failure to Cooperate With the State Bar.*

Baca was charged with, and found culpable of, failure to cooperate with a State Bar investigation, in violation of Business and Professions Code section 6068, subdivision (i). A declaration of a State Bar investigator stated that he wrote to Baca six times during the course of his investigation and received no reply, and, in fact, never received any communication from Baca.

---

[3] Although the money was to be paid to the three law firms, it was to come from a settlement of Puerta's claim. The law firms were entitled to the money because of the attorney lien claims. "Attorneys fees payable to the legal counsel for the injured worker are a lien on the injured's award; thus, they come out of the injured's recovery." (*Reich, Adell, Crost & Perry v. Workers' Comp. Appeals Bd.* (1979) 99 Cal.App.3d 225, 229 [160 Cal.Rptr. 218].)

D. *Mitigation and Aggravation.*

In mitigation, the hearing panel noted that Baca has no prior record of discipline. Baca's refusal or inability to account for improper conduct involving trust funds (Rules Proc. of State Bar, div. V., Stds. for Atty. Sanctions for Prof. Misconduct, std. 1.2(b)(iii); all further references to standards are to these provisions) was considered an aggravating factor by the hearing panel. The hearing panel also found Baca's misconduct in the Harvey matter significantly harmed Harvey. His misconduct in the Puerta matter significantly harmed the three law firms, the insurance carrier, and the operation of the WCAB. (Std. 1.2(b)(iv).) A final aggravating factor was Baca's lack of cooperation with Harvey, a victim of his misconduct, and with the State Bar during the disciplinary investigation and proceedings. (Std. 1.2(b)(vi).)

E. *Recommendation of the State Bar.*

The hearing panel, after review of the circumstances presented in this matter, recommended that Baca be disbarred. The review department, one member present not voting, unanimously recommended disbarment.

### Discussion

■ In reviewing the findings of the review department, we must exercise our independent judgment to determine whether the facts and circumstances of Baca's case justify the discipline recommended. (*In re Ford* (1988) 44 Cal.3d 810, 815 [244 Cal.Rptr. 476, 749 P.2d 1331]; *In re Vaughn* (1985) 38 Cal.3d 614, 618 [213 Cal.Rptr. 583, 698 P.2d 651].) However, the review department's recommendation is entitled to great weight. (*Slavkin* v. *State Bar* (1989) 49 Cal.3d 894, 904 [264 Cal.Rptr. 131, 782 P.2d 270]; *In re Lamb* (1989) 49 Cal.3d 239, 245 [260 Cal.Rptr. 856, 776 P.2d 765].) ■ It is Baca who bears the burden of showing that the review department's findings are not supported by the evidence or that its recommendation as to the appropriate degree of discipline is erroneous or unlawful. (*In re Ford, supra,* 44 Cal.3d at pp. 815-816.) Baca must demonstrate that the charges of unprofessional conduct are not sustained by convincing proof and to a reasonable certainty. (*Kapelus* v. *State Bar* (1987) 44 Cal.3d 179, 184 [242 Cal.Rptr. 196, 745 P.2d 917].)

■ In the Harvey and Puerta matters, the review department concluded that Baca had committed willful violations of Business and Professions

Code section 6103.[4] As we held in *Baker* v. *State Bar* (1989) 49 Cal.3d 804 [263 Cal.Rptr. 798, 781 P.2d 1344], "[s]ince this section does not define a duty or obligation of an attorney, but provides only that violation of his oath or duties defined elsewhere is a ground for discipline, petitioner did not violate this section." (*Id.* at p. 815.)

We turn first to Baca's allegation that he did not receive proper notice of the State Bar proceedings or of the entry of default. A notice to show cause was mailed to Baca on December 23, 1988. Baca claims he did not receive the notice until February 1989 because the notice had been sent to his former employer and had to be forwarded to him. Baca claims to have notified the State Bar of his change of address before the notice to show cause was mailed. However, the certification of Baca's membership record, provided by the supervisor of membership records and certification, shows that Baca did not inform the State Bar of his new address until January 12, 1989.

Even after Baca admittedly received the notice to show cause, he took no action. He claims he was suffering from depression and burnout, and was having domestic problems. He further states that his briefcase, which contained the notice to show cause, was "taken and hidden from him for one month." None of this, even if true, explains why Baca failed to take any action until the State Bar filed the recommendation of disbarment with this court. A member has a duty to respond to a notice to show cause within 20 days after service of the notice and, if no written answer has been filed within that time, the examiner may elect to proceed by the default procedures set forth in State Bar Rules of Procedure, rule 552.1. (Rules Proc. of State Bar, rule 552.)

Baca next claims that a notice of time and place of hearing dated January 13, 1989, was sent to his former employer and was never received by Baca. Even if Baca is correct in his assertion, which is not at all clear from the record, the failure to receive this one notice does not excuse his ignoring the entire proceedings of the State Bar. As has already been shown, Baca had notice that the State Bar was proceeding against him, yet he neglected the entire process until the matter reached this court.

Baca states that a notice of application to enter default was filed on or about January 23, 1989. According to the State Bar, Baca was served by

[4] Business and Professions Code section 6103 provides: "A willful disobedience or violation of an order of the court requiring him to do or forbear an act connected with or in the course of his profession, which he ought in good faith to do or forbear, and any violation of the oath taken by him, or of his duties as such attorney, constitute causes for disbarment or suspension."

mail with this notice and he did not respond. Baca does not contend that he did not receive this notice, yet he took no action in response.

Baca claims he was never served with the notice of entry of default that was filed on February 22, 1989, and that "the copy for petitioner and original envelope addressed to petitioner is in the State Bar Court files." The State Bar records show that the notice was mailed to Baca at his latest address shown on the official membership records of the State Bar. Service of the notice was complete by this proper mailing procedure. (Bus. & Prof. Code, § 6002.1, subd. (c); Rules Proc. of State Bar, rules 243 & 552.1(c).)

The notice of entry of default was dated February 22, 1989, and mailed by a clerk of the State Bar Court by certified mail, return receipt requested, to Baca at his correct address.[5] On March 14, 1989, the envelope (and its enclosure) were returned to the State Bar Court clerk's office because it was "unclaimed." A post office form attached to the envelope shows that a post office "notice" had been delivered to Baca three times but that Baca had never picked up the envelope. From this evidence, it appears that Baca continually refused to accept service of the notice. Baca cannot defeat service by refusing to accept his mail, and he cannot now come before this court and argue that his own dereliction caused the notice to be defective.

Baca next claims that a notice of hearing issued on February 24, 1989, was not served. The notice pertained to the formal hearing on the State Bar charges. According to the Rules of Procedure of the State Bar, rule 552.1(d)(ii), (iii), the hearing shall occur no later than 60 days after filing of the notice of entry of default; if the respondent fails to appear at the formal hearing, the charges contained in the notice to show cause as to which the member's default has been entered shall be admitted and no further proof shall be required to be adduced to establish the truth of those charges.

Baca's claim that he did not receive the notice of hearing is correct and the State Bar does not claim that the notice was served. The notice of

---

[5] Baca's address on February 22, 1989, was shown on the State Bar records as:
"DiMarco & Araiyo
12100 Eimperial [sic] Hwy. 209
Norwalk, CA 90650."

The notice of entry of default was sent to Baca's correct address:

"Salvador Baca
12100 E. Imperial Highway #209
Norwalk, California 90650."

The typographical error was corrected in the State Bar records on March 31, 1989.

hearing, however, was dated after the default was properly entered and, as such, it was not necessary to serve the notice on Baca. (See Rules Proc. of State Bar, rule 552.1(d)(i).)

The State Bar claims that Baca was served by mail with a request for judicial notice at trial (requesting the State Bar Court to take judicial notice of the proceedings of the WCAB), a copy of the decision of the hearing panel, a copy of the State Bar examiner's request for review by the review department and a copy of the review department minutes. Baca does not contend that he was not served with these papers.

As noted above, Baca must demonstrate that the charges of unprofessional conduct are not sustained by convincing proof and to a reasonable certainty. (*Kapelus* v. *State Bar*, *supra*, 44 Cal.3d 179, 184.) Baca has made his task difficult for himself by failing to cooperate with the State Bar proceedings. As he did not present any evidence on his own behalf in these proceedings, he has made it almost impossible to prove that the findings of the review department are not supported by the evidence or that the recommendation of disbarment is excessive.

Baca was properly notified of his default. He ignored that notice and all subsequent notices he received regarding the State Bar proceeding going forward against him. At no time did he apply for a relief from default as provided for by State Bar Rules of Procedure, rule 555.1. He now attempts to introduce evidence and raise contentions on his own behalf in his petition for review. Baca had ample opportunity during the time when the formal disciplinary proceedings occurred in which to prepare and present a defense. In short, after ignoring completely the entire State Bar proceeding against him, Baca only now comes forward to proffer his version of what occurred.

The appropriate forum for hearing Baca's evidence was before the State Bar Court where he could have presented his evidence and argued his contentions. That evidence could then have been challenged by the State Bar Office of Trial Counsel and appropriate findings could have been made by the State Bar Court. As we stated in *Lydon* v. *State Bar* (1988) 45 Cal.3d 1181, 1187 [248 Cal.Rptr. 830, 756 P.2d 217], ". . . this court generally 'does not consider evidence which was not presented to the State Bar during its review process.' (*Rosenthal* v. *State Bar* (1987) 43 Cal.3d 658, 663 [238 Cal.Rptr. 394, 738 P.2d 740].) Such evidence is virtually impossible to evaluate in the absence of cross-examination . . . . (See *In re Possino* (1984) 37 Cal.3d 163, 171 [207 Cal.Rptr. 543, 689 P.2d 115], fn. omitted.)"

Having rejected Baca's attempts to introduce new evidence at this stage of the proceedings, we now address the findings of the review department to determine if they justify the State Bar's recommendation.

In the Harvey matter, Baca accepted $120 from his client for filing fees and did nothing. To make matters worse, Baca failed to return Harvey's telephone calls or communicate with him in any other fashion. Harvey's action is long since barred by the statute of limitations. As Baca did not participate in the State Bar proceedings, there is no evidence in the record to support his current contention that the payment was for legal fees that Harvey owed him. In fact, the only evidence in the record is the declaration of Harvey that the $120 was paid for filing fees.

■ Although neither the hearing panel nor the review department made a formal finding of misappropriation, we note that an attorney's failure to use entrusted funds for the purpose for which they were entrusted constitutes misappropriation. (*Copren* v. *State Bar* (1944) 25 Cal.2d 129, 134 [152 P.2d 729].) ■ Because of Baca's misconduct, any claim Harvey might have had was irretrievably lost. The harm to Harvey was significant and warrants substantial discipline. (See std. 2.4(b) [failure to perform services in an individual matter not demonstrating a pattern of misconduct shall result in reproval or suspension, depending on the extent of the misconduct and the degree of harm to the client], and std. 2.2(a) [culpability of a member of willful misappropriation of entrusted funds or property shall result in disbarment; only if the amount of funds or property misappropriated is insignificantly small or if the most compelling mitigating circumstances clearly predominate, shall disbarment not be imposed].)

In the Puerta matter, Baca misappropriated $2,200 he held for the benefit of his client's previous attorneys. Baca spent the money and did not repay it for almost a year. He repaid it only after contempt proceedings had been brought against him. Such conduct constitutes the conversion of funds belonging to others—an act involving moral turpitude. Standard 2.3 provides that "[c]ulpability of a member of an act of moral turpitude, fraud, or intentional dishonesty toward a court, client or another person . . . shall result in actual suspension or disbarment depending upon the extent to which the victim of the misconduct is harmed or misled and depending upon the magnitude of the act of misconduct and the degree to which it relates to the member's acts within the practice of law."[6] The contempt finding by the workers' compensation judge demonstrates the seriousness of Baca's offense.

The facts of this case involve the failure to use client funds for the purposes for which they were intended. There is very little in the way of

---

[6] The hearing panel relied on standard 2.2(a) in the Puerta matter. However, due to the mistake by the insurance company in sending Baca a check for the entire $3,600, it is unclear whether this money was "entrusted" to Baca within the meaning of standard 2.2(a). Therefore, we rely on standard 2.3 rather than standard 2.2(a).

mitigation. Consequently, the facts do not support a lenient result under standard 2.3.

Baca, in his petition for review, now offers explanations and excuses for the failure to repay the money. As stated before, we have no way of evaluating these claims without the benefit of cross-examination that would have come had Baca responded to the State Bar proceedings. Furthermore, Baca was held in contempt by a WCAB judge for his failure to make repayment. The finding of contempt belies Baca's current claim that the failure to repay was a mistake.

Baca was also found culpable of failing to cooperate with the State Bar in its investigation. The State Bar investigator began writing to Baca in August 1986. Baca, however, did nothing until the matter reached us almost four years later. Baca's failure to cooperate until the recommendation of disbarment was made reflects a disdain and contempt for the orderly process and rule of law on the part of an attorney who has sworn to uphold the law. Such conduct deserves severe discipline. Baca's failure to cooperate violates Business and Professions Code section 6068, subdivision (i) (failure to cooperate in disciplinary proceedings). Standard 2.6 provides that the discipline for such violation is suspension or disbarment, depending on the gravity of the offense, with due regard to the purposes of imposing discipline as set forth in standard 1.3 (i.e., the protection of the public, the maintenance of high professional standards, and the preservation of public confidence in the legal system.) (See also *Codiga* v. *State Bar* (1978) 20 Cal.3d 788, 796 [144 Cal.Rptr. 404, 575 P.2d 1186]; *Martin* v. *State Bar* (1978) 20 Cal.3d 717, 723 [144 Cal.Rptr. 214, 575 P.2d 757].)

In determining attorney discipline, we give great weight to the recommendation of the review department and to the standards (*In re Naney* (1990) 51 Cal.3d 186, 190 [270 Cal.Rptr. 848, 793 P.2d 54]), although neither is binding on us. A review department's recommendation that is supported by the standards will not be rejected unless we have grave doubts as to the propriety of the recommended discipline. (*In re Naney*, *supra*, 51 Cal.3d at p. 190; *Lawhorn* v. *State Bar* (1987) 43 Cal.3d 1357, 1366 [240 Cal.Rptr. 848, 743 P.2d 908].)

Baca misappropriated funds, failed to maintain adequate communications with his clients, and failed to timely file a suit on behalf of a client. He showed a failure to respect the law and the courts in not repaying the WCAB attorney fees until contempt proceedings had been instituted. Finally, he showed a failure to respect the law and the courts by failing to cooperate with the State Bar in these proceedings.

In light of the seriousness of his actions and the lack of significant mitigating circumstances, we believe that the recommendation of the review department is correct and should not be altered.

## DISPOSITION

It is ordered that petitioner Salvador Diaz Baca be disbarred and that his name be stricken from the roll of attorneys in this state. It is further ordered that he comply with the requirements of rule 955 of the California Rules of Court, and perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, of the effective date of this order. This order is effective upon the finality of this decision in this court. (See Cal. Rules of Court, rule 953(a).)