470 N.W.2d 549 (1991)
238 Neb. 239
STATE of Nebraska ex rel. NEBRASKA STATE BAR ASSOCIATION, Relator,
v.
Douglas VEITH, Respondent.
No. 90-461.
Supreme Court of Nebraska.
May 31, 1991.
*552 Alison L. Larson, Asst. Counsel for Discipline, for relator.
Jon S. Reid and Mark E. Novotny of Kennedy, Holland, DeLacy & Svoboda, for respondent.
HASTINGS, C.J., and BOSLAUGH, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.
PER CURIAM.
In this attorney disciplinary proceeding, we find that since he knowingly and willfully transferred and commingled client trust funds with funds in his and his associated lawyers' law office business account, and because he misappropriated some of those funds to his own use and to other improper purposes, Douglas Veith should be disbarred.
Specifically, we find that the record reveals by clear and convincing evidence that Veith violated his oath of office as an attorney and Canon 1, DR 1-102, and Canon 9, DR 9-102, of the lawyers' Code of Professional Responsibility. We agree with the relator, the Nebraska State Bar Association (NSBA), that the 8-month suspension recommended by the referee is inappropriate under the circumstances of this case. The 2-year suspension suggested by the NSBA Counsel for Discipline is also too lenient.
A proceeding to discipline an attorney is a trial de novo on the record, in which the Supreme Court reaches a conclusion independent of the findings of the referee, provided, where credible evidence is in conflict on a material issue of fact, the Supreme Court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. State ex rel. NSBA v. Thor, 237 Neb. 734, 467 N.W.2d 666 (1991); State ex rel. NSBA v. Rhodes, 234 Neb. 799, 453 N.W.2d 73 (1990), cert. denied ___ U.S. ___, 111 S.Ct. 153, 112 L.Ed.2d 119. The Supreme Court, in its de novo review of the record, must find that the particular complaint has been established by clear and convincing evidence in order to sustain it against an attorney in a disciplinary proceeding. Id.

FACTUAL BACKGROUND
The undisputed facts in the record here reveal that Veith was admitted to the practice of law in the State of Nebraska in June 1982. At all times relevant, Veith was the managing attorney in a five-attorney office-sharing arrangement in Bellevue, Nebraska. *553 As managing attorney, Veith received the monthly bank statements regarding the general law business and client trust accounts. Each of the attorneys used the trust account for his respective clients' trust funds.
In July 1988, Veith was informed by the bank that it had transferred funds from the trust account to the general law business account to cover a shortage of funds. At various other times Veith transferred or authorized the transfer of funds to the business account from the client trust account.
During the period of August 1988 through February 1989, Veith, although he was generally aware of periodic deficits in both the trust and business accounts, failed to reconcile the accounts or take other action to avoid the deficit problem. Between September 1988 and March 1989, the trust account had negative balances. At a minimum, throughout this period, it should have contained $16,900 in client trust funds. Between July 1988 and March 1989, Veith withdrew as income $70,000 from the business account. On March 3, 1989, one of the associated attorneys questioned Veith about the trust account balance. Veith acknowledged that the trust account had over a $3,000 negative balance. He secured a $10,000 personal loan from a bank and deposited that money into the trust fund that same day to cover the deficiency in the client trust fund account of the complaining associated lawyer. Subsequently, Veith borrowed $25,000 from a friend to cover deficiencies in the other associated attorneys' trust funds. On March 27, 1989, Veith secured a loan from a relative in the amount of $10,600, which he deposited in the trust account to cover trust funds for which Veith was accountable to his own clients.
Meanwhile, on March 9, 1989, all the attorneys in the office-sharing arrangement, including Veith, made a conference call to the NSBA Counsel for Discipline, explaining the matter and setting in motion an investigation.
The Committee on Inquiry of the Fourth Disciplinary District, after an October 16, 1989, hearing, recommended that formal charges be filed against Veith. These charges were reviewed by the Disciplinary Review Board and were filed as an original action in this court on May 29, 1990. The formal charges allege that the actions of Veith, as set forth above, constitute a violation of his oath of office, as provided by Neb.Rev.Stat. § 7-104 (Reissue 1987), and of DR 1-102 and DR 9-102.
Section 7-104 provides that every attorney admitted to practice law in Nebraska shall take and subscribe an oath swearing to support the Nebraska and U.S. Constitutions and to faithfully discharge the duties of an attorney and counselor to the best of his or her abilities. An attorney's violation of a disciplinary rule and failure to act competently by neglecting a matter entrusted to him or her is conduct violative of an attorney's oath as a member of the bar. State ex rel. Nebraska State Bar Assn. v. Divis, 212 Neb. 699, 325 N.W.2d 652 (1982). See State ex rel. NSBA v. Hahn, 218 Neb. 508, 356 N.W.2d 885 (1984) (the oath requires lawyers to observe the established codes of professional ethics). DR 1-102 and DR 9-102 provide as follows:
DR 1-102 Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
....
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
DR 9-102 Preserving Identity of Funds and Property of a Client.
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank or savings and loan association accounts maintained in the state in which the law office is *554 situated and no funds belonging to the lawyer or law firm shall be deposited therein [with exceptions not applicable here].
(B) A lawyer shall:
....
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding time.
Following a formal hearing on November 16, 1990, a referee, on December 7, 1990, filed her report with this court. The referee found that Veith had violated the disciplinary rules with which he was charged. The referee recommended, among five components, that Veith be suspended from the practice of law for a period of 8 months. The NSBA filed an exception to the report, arguing that the referee's recommendation of suspension for a period of 8 months was too lenient under the facts and circumstances as established by the record of this case.
In his answer to the formal charges, Veith admits violating DR 1-102(A)(1) and DR 9-102(B)(3) but none of the other enumerated provisions of DR 1-102 or DR 9-102. In essence, Veith admits to commingling the business and client trust fund accounts but attributes it to negligence. He denies attempting to intentionally or dishonestly convert the funds, perpetrate a fraud, or deceive or misrepresent matters to his associated counsel or clients. In contrast, the NSBA argues that Veith has gone beyond commingling and has converted or willfully misappropriated the client trust funds.

COMMINGLING AND MISAPPROPRIATION
In attorney discipline proceedings, conversion refers to an attorney's misappropriation of a client's property to the attorney's own use or some other improper use. See ABA/BNA Lawyers' Manual on Professional Conduct 45:106 (1985). Misappropriation is "any unauthorized use ... of clients' funds entrusted to [a lawyer], including not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." In re Wilson, 81 N.J. 451, 455 n. 1, 409 A.2d 1153, 1155 n. 1 (1979). See Baca v. State Bar of California, 52 Cal.3d 294, 801 P.2d 412, 276 Cal.Rptr. 169 (1990) (an attorney's failure to use entrusted funds for the purpose for which they were entrusted constitutes misappropriation). Misappropriation caused by serious, inexcusable violation of a duty to oversee entrusted funds is deemed willful, even in the absence of a deliberate wrongdoing. Edwards v. State Bar of California, 52 Cal.3d 28, 801 P.2d 396, 276 Cal.Rptr. 153 (1990). See, Giovanazzi v. State Bar of California, 28 Cal.3d 465, 619 P.2d 1005, 169 Cal.Rptr. 581 (1980) (mere fact that an attorney's trust account balance falls below the amount deposited in and purportedly held in trust supports a finding of misappropriation); Matter of Iversen, 51 A.D.2d 422, 381 N.Y.S.2d 711 (1976) (an act of conversion is complete when the clients' trust account is overdrawn or when, through mismanagement or misconduct on the part of the attorney, the balance of the account is less than the clients' interest in it). Thus, under DR 9-102, wrongful or improper intent is not an element of misappropriation. See, In re Wilson, supra; Archer v. State, 548 S.W.2d 71 (Tex.Civ. App.1977) (DR 9-102 does not require elements of fraud, culpability, or willfulness); State v. Stoveken, 68 Wis.2d 716, 229 N.W.2d 224 (1975) (attorney's intent to defraud or lack thereof is irrelevant when drawing checks on clients' trust account to pay personal expenses).
We have held that an attorney has a duty to keep separate and properly account for client trust funds entrusted to the attorney and to promptly pay over and deliver such funds to the client upon request. See State ex rel. NSBA v. Statmore, 218 Neb. 138, 352 N.W.2d 875 (1984). See, also, DR 9-102. An attorney may not use client trust funds to cover business expenses. See, In re Lewis, 118 Ill.2d 357, 113 Ill.Dec. 287, 515 N.E.2d 96 (1987) (professional corporation's operating account); *555 Edmondson v. State Bar of California, 29 Cal.3d 339, 625 P.2d 812, 172 Cal.Rptr. 899 (1981) (business debts); Bar Assn. v. Thompson, 69 Ohio St.2d 667, 433 N.E.2d 602 (1982) (overhead and operating expenses). Based upon Veith's admissions and other clear and convincing evidence in the record, this court finds that Veith, by knowingly commingling and misappropriating trust funds, inexcusably breached his oath of office and his duty to his clients and to the clients of the lawyers sharing office space with him. In short, the clear and convincing evidence reflects that Veith is guilty of each of the charges brought against him.

DISCIPLINE
The next step is to determine the appropriate sanction. To determine whether and to what extent discipline should be imposed it is necessary that the following factors be considered: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) his present or future fitness to continue in the practice of law. State ex rel. NSBA v. Thor, 237 Neb. 734, 467 N.W.2d 666 (1991); State ex rel. NSBA v. Rhodes, 234 Neb. 799, 453 N.W.2d 73 (1990), cert. denied ___ U.S. ___, 111 S.Ct. 153, 112 L.Ed.2d 119.
There is no question that misappropriation of client funds, as one of the most serious violations of duty an attorney owes to his client, the public, and the courts, typically warrants disbarment. See, State, ex rel. Hunter, v. Hatteroth, 134 Neb. 451, 279 N.W. 153 (1938) (misappropriation by an attorney of money belonging to his client is such a disregard of duty as to warrant disbarment); State, ex rel. Hunter, v. Boe, 134 Neb. 162, 278 N.W. 144 (1938) (an attorney is subject to disbarment because of delinquency in accounting to clients for money received in his professional capacity, in violation of his duty to the public); State, ex rel. Spillman, v. Priest, 118 Neb. 47, 223 N.W. 635 (1929) (delinquency in accounting for money received in professional capacity is ground for disbarment as violating duty to maintain respect due courts). "`In the hierarchy of offenses for which lawyers may be disciplined, stealing from a client must be among those at the very top of the list.'" The Florida Bar v. McShirley, 573 So.2d 807, 808 (Fla.1991), quoting The Florida Bar v. Tunsil, 503 So.2d 1230 (Fla. 1986).
Misappropriation affects both the bar and the public because it is a serious offense involving moral turpitude. See, In re Phillips, 767 S.W.2d 16 (Mo. 1989) (receiving client's funds and converting them to personal use by placing them in office account without consent of client is illegal conduct involving moral turpitude); Bambic v. State Bar of California, 40 Cal.3d 314, 707 P.2d 862, 219 Cal.Rptr. 489 (1985) (misappropriation of client funds involves moral turpitude and undermines public confidence in legal profession); In re Patt, 81 Ill.2d 447, 43 Ill.Dec. 737, 410 N.E.2d 870 (1980) (conversion of a client's funds is an act involving moral turpitude). "Misappropriation is more than a grievous breach of professional ethics. It violates basic notions of honesty and endangers public confidence in the legal profession." Grim v. State Bar of California, 53 Cal.3d 21, 29, 805 P.2d 941, 943, 278 Cal.Rptr. 682, 684 (1991). "`The most common definition of an act of moral turpitude is one that is "contrary to honesty and good morals." [citations.]' ... ` "The paramount purpose of the `moral turpitude' standard is not to punish practitioners but to protect the public, the courts, and the profession against unsuitable practitioners...."`" In re Scott, 52 Cal.3d 968, 978, 802 P.2d 985, 991, 277 Cal.Rptr. 201, 207 (1991).
This court disagrees with Veith's assessment that his violation did not involve moral turpitude. At various times, by his own admission, Veith knowingly transferred money from the client trust account to the business account of his law office. He admitted that during this period 20 percent of the money from the trust fund was used by him personally and 80 percent was used for salaries and other office expenses. *556 During this period he bought himself an automobile, provided a telephone for his automobile, furnished his law office with a new leased computer system that cost $2,000 per month, and updated his law library, all so he would appear successful.
This court also disagrees with Veith's assessment that his conduct does not affect his present or future fitness to continue in the practice of law. In his new partnership arrangement Veith has taken steps so that he cannot sign checks on either the trust or business account. While admirable, this situation creates a paralogism. Veith asks this court and his clients to trust him, yet he apparently has some question as to his own trustworthiness.

MITIGATING FACTORS
This court must next determine whether there are factors which would mitigate the sanction of disbarment, suggesting that a lesser sanction may be more appropriate. Mitigating circumstances shown in the record should be considered in determining the appropriate discipline imposed on an attorney violating the Code of Professional Responsibility. State ex rel. NSBA v. Miller, 225 Neb. 261, 404 N.W.2d 40 (1987).
Respondent presents an array of arguments, starting with a lack of intent. "As the term is used in attorney discipline cases, `willful misappropriation' covers a broad range of conduct varying significantly in the degree of culpability." Edwards v. State Bar of California, 52 Cal.3d 28, 38, 801 P.2d 396, 402, 276 Cal.Rptr. 153, 159 (1990). Therefore, misconduct, although technically willful, may be less culpable if committed as a result of negligence and not as a result of a deliberate act. Veith's argument is that he negligently rather than deliberately breached his duty. The record does not support this contention. He was aware that the bank transferred funds from the trust account to the business account but he took no action. He also transferred or authorized some transfers from the client trust fund account to the business account. That Veith knowingly and intentionally misappropriated trust funds is evidenced by his conversations with his minister. He told his minister that he transferred funds from the trust account to the law office business account because he was running short on money. The minister understood Veith considered the transfer to be a temporary "quick-fix" which he would fix later.
Intent to misappropriate client funds may be inferred from circumstantial evidence. See In re Phelps, 306 Or. 508, 760 P.2d 1331 (1988). See, also, NJI 14.11 ("Intent is a mental process and it therefore generally remains hidden within the mind where it is conceived. It is rarely if ever susceptible of proof by direct evidence. It may, however, be inferred from the words and acts of the defendant and from the facts and circumstances surrounding his conduct"). Perhaps the initial transfer of funds was due to Veith's negligence. However, the first transfer was not an isolated incident. There were repeated incidents in which Veith knew that the bank was transferring funds from the client trust fund account to the business account after the initial transaction. There were various times he authorized a transfer or personally transferred funds from the trust account to the business account. See State ex rel. NSBA v. Kirshen, 232 Neb. 445, 441 N.W.2d 161 (1989) (cumulative acts of attorney misconduct are distinguishable from isolated incidents of neglect and therefore justify more serious sanctions). Veith never made an accounting over the period in question. At the same time he received a salary of approximately $70,000.
Veith's next argument is that no client was injured because he made full restitution. He relies upon State ex rel. NSBA v. Fitzgerald, 227 Neb. 90, 416 N.W.2d 28 (1987), for the proposition that restitution of the misused funds prior to being faced with accountability may mitigate the discipline to be imposed and apparently evidences a lack of wrongful intent. The problem for Veith is that, although he was not yet faced with formal accountability, the restitution he provided was not made until after he was confronted by an *557 associated lawyer. At that point any motivation to make restitution came from the fear of being detected and punished rather than from a surge of conscience. The California Supreme Court has recognized the principle that if the misappropriation occurs through the attorney's laxity rather than wrongful intent, and if this lack of intent is reinforced by the attorney's having taken remedial action immediately upon discovery of the problem, less discipline than disbarment may be appropriate. See Waysman v. State Bar of California, 41 Cal.3d 452, 714 P.2d 1239, 224 Cal.Rptr. 101 (1986); Palomo v. State Bar of California, 36 Cal.3d 785, 685 P.2d 1185, 205 Cal.Rptr. 834 (1984). Even if this court were to accept Veith's position that he was merely negligent, he would not fall within this sound principle because over a course of almost 8 months, although he knew and participated in the transfer of funds from the trust account to the law office business account, he took no action to restore the trust funds. It was not until he was confronted that he confessed to any wrongdoing. Cf. State ex rel. NSBA v. Miller, supra (attorney made restitution of converted funds more than 2 years prior to a complaint filed against him and without threat of disciplinary action).
One of the purposes of DR 1-102 and DR 9-102 of the Code of Professional Responsibility is to protect innocent persons from suffering any financial loss because of any misappropriation of funds by lawyers. In this case, Veith's contention that any sanction should be mitigated because no lawyer's client suffered any financial loss is not persuasive. Veith borrowed $10,000 from a bank, $25,000 from a friend, and $10,600 from a relative to restore those funds in the trust account which he had misappropriated. On October 16, 1989, when asked by a member of the Committee on Inquiry where he stood on these loans, Veith replied: "Very seriously within the last 48 to 72 hours my wife and I have seriously sat down and talked about bankruptcy and that's a very serious consideration to the point where we've formulated a plan to potentially do that."
Because Veith borrowed money and reimbursed the funds he misappropriated, the clients of Veith and his associated lawyers have not suffered a financial loss. But that does not mean that innocent parties might not suffer financial loss because of Veith's misappropriations. Veith filed bankruptcy both personally and for his business on January 13, 1990. His innocent lenders may or may not suffer a financial loss. Regardless of whether the lenders are or are not reimbursed, the fact that no client suffered any financial loss is no excuse for a lawyer to misappropriate clients' funds nor any reason why a lawyer should not receive a severe sanction. See, In the Matter of Galloway, 278 S.C. 615, 300 S.E.2d 479 (1983) (restitution of converted funds may have little or no effect in mitigating the sanction); Greenbaum v. State Bar, 15 Cal.3d 893, 544 P.2d 921, 126 Cal.Rptr. 785 (1976) (fact that client was not and would not be harmed by attorney's action was irrelevant); Heavey v. State Bar, 17 Cal.3d 553, 551 P.2d 1238, 131 Cal.Rptr. 406 (1976) (fact that client suffers no harm is mere fortuity). But see, Louisiana State Bar Ass'n v. Larré, 457 So.2d 649 (La.1984) (repayment of funds along with severe depression and lack of prior disciplinary record may act as mitigating factors); The Florida Bar v. Whitlock, 426 So.2d 955 (Fla.1982) (depositing personal funds into client trust accounts to bring them back to their proper balances will not excuse the lawyer of his conversion, but where there is no permanent financial loss to client a lighter sanction may be imposed).
Factors which do favor mitigation are that Veith (1) was in good standing and free from disciplinary complaint or penalty, (2) has exhibited an attitude of regret and remorse, (3) has sought and received counseling, (4) has a good reputation in the community, (5) has cooperated fully with the Counsel for Discipline, and (6) has apparently provided many pro bono hours.

CONCLUSION
Veith cites a myriad of cases comparing various misconduct violations and their resulting sanctions. None of those are binding on this court's decision. To determine what sanction is appropriate, *558 each case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances. State ex rel. NSBA v. Miller, 225 Neb. 261, 404 N.W.2d 40 (1987). Disbarment has been, and continues to be, a viable sanction in cases involving serious breach of disciplinary rules.
There has been a trend in recent years toward lighter sanctions, a trend this court is convinced must be reversed. The correlation between the decline of public confidence in the legal profession and the trend toward lighter attorney discipline sanctions is no coincidence.
"[Excuses such as] a `lack of intent to deprive the client of his money' or `personal hardship' ... stand out like an invitation to the lawyer who is in financial difficulty for one reason or another. All too often he is willing to risk a slap on the wrist, and even a little ignominy, hoping he won't get caught, but knowing that if he is he can plead restitution, but [sic] duly contrite, and escape the ultimate punishment. The profession and the public suffer as a consequence. The willful misappropriation of client funds should be the Bar's equivalent of a capital offense. The [sic] should be no excuses."
The Florida Bar v. Breed, 378 So.2d 783, 784 (Fla.1979) (Florida Supreme Court quoting a referee and giving notice that it would not be reluctant to disbar an attorney for this type of offense, reversing past trend of suspension as only discipline).
Notwithstanding the mitigating factors in Veith's favor, the facts that Veith commingled trust funds with his law office funds and willfully misappropriated them lead this court to conclude that in this case disbarment is the only appropriate sanction. Veith is directed to pay costs in accordance with Neb.Rev.Stat. §§ 7-114 and 7-115 (Reissue 1987).
JUDGMENT OF DISBARMENT.
WHITE, J., not participating.