No. 68,154

IN THE MATTER OF DOUGLAS VEITH, *Respondent.*

(843 P.2d 729)

Opinion filed December 14, 1992.

*Curtis E. Watkins*, of Geisert & Watkins, P.A., of Kingman, argued the cause and was on the brief for respondent.

*Bruce E. Miller*, Disciplinary Administrator, argued the cause and was on the brief for petitioner.

*Per Curiam*: This is an original action in discipline filed by the Disciplinary Administrator against Douglas Veith, presently residing in the Kansas City area, an attorney admitted to the practice of law in Kansas and formerly a member of the bar of the State of Nebraska.

The formal complaint filed by the Disciplinary Administrator is based upon disciplinary proceedings before the Supreme Court of Nebraska, which resulted in the disbarment of Mr. Veith in that state. *State ex rel. NSBA vs. Veith*, 238 Neb. 239, 470 N.W. 2d 549 (1991). A panel of the Kansas Board for Discipline of Attorneys (Board), which heard this matter, received voluminous evidence, including a complete transcript of the Nebraska proceedings, numerous exhibits from those proceedings, and the testimony of Mr. Veith and a supporting witness. In addition, the Board received numerous letters attesting to Mr. Veith's good character.

The proceedings before the Board were presented by the Disciplinary Administrator pursuant to Supreme Court Rule 202 (1992 Kan. Ct. R. Annot. 152), which provides in part:

"A final adjudication in another jurisdiction that a lawyer has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in this state."

Following the hearing, the Board filed its report in which it recommended that Mr. Veith be indefinitely suspended from the practice of law in Kansas. Respondent's presentation and evidence before the Board and his exceptions filed to its report do not controvert or question the factual findings of the Nebraska court

but are directed solely to issues asserted in mitigation of the discipline to be imposed here. In essence, respondent admits the facts found by the Nebraska court are correct and that he has violated the disciplinary rules as determined by the Nebraska court. In the proceedings before the Board and this court he seeks leniency in the imposition of discipline.

The Nebraska Supreme Court, in a comprehensive opinion, set forth the factual background as follows:

"The undisputed facts in the record here reveal that Veith was admitted to the practice of law in the State of Nebraska in June 1982. At all times relevant, Veith was the managing attorney in a five-attorney office-sharing arrangement in Bellevue, Nebraska. As managing attorney, Veith received the monthly bank statements regarding the general law business and client trust accounts. Each of the attorneys used the trust account for his respective clients' trust funds.

"In July 1988, Veith was informed by the bank that it had transferred funds from the trust account to the general law business account to cover a shortage of funds. At various other times Veith transferred or authorized the transfer of funds to the business account from the client trust account.

"During the period of August 1988 through February 1989, Veith, although he was generally aware of periodic deficits in both the trust and business accounts, failed to reconcile the accounts or take other action to avoid the deficit problem. Between September 1988 and March 1989, the trust account had negative balances. At a minimum, throughout this period, it should have contained $16,900 in client trust funds. Between July 1988 and March 1989, Veith withdrew as income $70,000 from the business account. On March 3, 1989, one of the associated attorneys questioned Veith about the trust account balance. Veith acknowledged that the trust account had over a $3,000 negative balance. He secured a $10,000 personal loan from a bank and deposited that money into the trust fund that same day to cover the deficiency in the client trust fund account of the complaining associated lawyer. Subsequently, Veith borrowed $25,000 from a friend to cover deficiencies in the other associated attorneys' trust funds. On March 27, 1989, Veith secured a loan from a relative in the amount of $10,600, which he deposited in the trust account to cover trust funds for which Veith was accountable to his own clients.

"Meanwhile, on March 9, 1989, all the attorneys in the office-sharing arrangement, including Veith, made a conference call to the NSBA Counsel for Discipline, explaining the matter and setting in motion an investigation.

"The Committee on Inquiry of the Fourth Disciplinary District, after an October 16, 1989, hearing, recommended that formal charges be filed against Veith. These charges were reviewed by the Disciplinary Review Board and were filed as an original action in this court on May 29, 1990. The formal charges allege that the actions of Veith, as set forth above, constitute a

violation of his oath of office, as provided by Neb. Rev. Stat. § 7-104 (Reissue 1987), and of DR 1-102 and DR 9-102.

"Section 7-104 provides that every attorney admitted to practice law in Nebraska shall take and subscribe an oath swearing to support the Nebraska and U.S. Constitutions and to faithfully discharge the duties of an attorney and counselor to the best of his or her abilities. An attorney's violation of a disciplinary rule and failure to act competently by neglecting a matter entrusted to him or her is conduct violative of an attorney's oath as a member of the bar. *State ex rel. Nebraska State Bar Assn. v. Divis,* 212 Neb. 699, 325 N.W.2d 652 (1982). See *State ex rel. NSBA v. Hahn,* 218 Neb. 508, 356 N.W.2d 885 (1984) (the oath requires lawyers to observe the established codes of professional ethics). DR 1-102 and DR 9-102 provide as follows:

DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

(3) Engage in illegal conduct involving moral turpitude.

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

DR 9-102 Preserving Identity of Funds and Property of a Client.

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank or savings and loan association accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein [with exceptions not applicable here].

(B) A lawyer shall:

. . . .

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding time (sic).

"Following a formal hearing on November 16, 1990, a referee, on December 7, 1990, filed her report with this court. The referee found that Veith had violated the disciplinary rules under which he was charged. The referee recommended, among five components, that Veith be suspended from the practice of law for a period of 8 months. The NSBA filed an exception to the report, arguing that the referee's recommendation of suspension for a period of 8 months was too lenient under the facts and circumstances as established by the record of this case.

"In his answer to the formal charges, Veith admits violating DR 1-102(A)(1) and DR 9-102(B)(3) but none of the other enumerated provisions of DR 1-102 or DR 9-102. In essence, Veith admits to commingling the business and client trust fund accounts but attributes it to negligence. He denies attempting to intentionally or dishonestly convert the funds, perpetrate a

fraud, or deceive or misrepresent matters to his associated counsel or clients. In contrast, the NSBA argues that Veith has gone beyond commingling and has converted or wilfully misappropriated the client trust funds." 238 Neb. at 242-45.

In finding Mr. Veith guilty of the charges against him, the Nebraska court stated:

"In attorney discipline proceedings, conversion refers to an attorney's misappropriation of a client's property to the attorney's own use *or some other improper use*. See ABA/BNA Lawyers' Manual on Professional Conduct 45:106 (1985). Misappropriation is 'any unauthorized use . . . of clients' funds entrusted to [a lawyer], including not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom.' *In re Wilson*, 18 N.J. 451, 455 n.1, 409 A.2d 1153, 1155 n.1 (1979). See *Baca v. State Bar of California*, 52 Cal. 3d 294, 801 P.2d 412, 276 Cal. Rptr. 169 (1990) (an attorney's failure to use entrusted funds for the purpose for which they were entrusted constitutes misappropriation). Misappropriation caused by serious, inexcusable violation of a duty to oversee entrusted funds is deemed willful, even in the absence of a deliberate wrongdoing. *Edwards v. State Bar of California*, 52 Cal. 3d 28, 801 P.2d 396, 276 Cal. Rptr. 153 (1990). See, *Giovanazzi v. State Bar of California*, 28 Cal. 3d 465, 619 P.2d 1005, 169 Cal. Rptr. 581 (1980) (mere fact that an attorney's trust account balance falls below the amount deposited in and purportedly held in trust supports a finding of misappropriation); *Matter of Iverson*, 51 A.D.2d 422, 381 N.Y.S.2d 711 (1976) (an act of conversion is complete when the clients' trust account is overdrawn or when, through mismanagement or misconduct on the part of the attorney, the balance of the account is less than the clients' interest in it). Thus, under DR 9-102, wrongful or improper intent is not an element of misappropriation. See, *In re Wilson, supra; Archer v. State*, 548 S.W.2d 71 (Tex. Civ. App. 1977) (DR 9-102 does not require elements of fraud, culpability, or willfulness); *State v. Stoveken*, 68 Wis. 2d 716, 229 N.W.2d 224 (1975) (attorney's intent to defraud or lack thereof is irrelevant when drawing checks on clients' trust account to pay personal expenses).

"We have held that an attorney has a duty to keep separate and properly account for client trust funds entrusted to the attorney and to promptly pay over and deliver such funds to the client upon request. See, *State ex rel. NSBA v. Statmore*, 218 Neb. 138, 352 N.W.2d 875 (1984). See, also, DR 9-102. An attorney may not use client trust funds to cover business expenses. See, *In re Lewis*, 118 Ill. 2d 357, 515 N.E.2d 96 (1987) (professional corporation's operating account); *Edmondson v. State Bar of California*, 29 Cal. 3d 339, 625 P.2d 812, 172 Cal. Rptr. 899 (1981) (business debts); *Bar Assn. v. Thompson*, 69 Ohio St. 2d 667, 433 N.E.2d 602 (1982) (overhead and operating expenses). Based upon Veith's admissions and other clear and convincing evidence in the record, this court finds that Veith, by knowingly commingling and misappropriating trust funds, inexcusably breached his oath

of office and his duty to his clients and to the clients of the lawyers sharing office space with him. In short, the clear and convincing evidence reflects that Veith is guilty of each of the charges brought against him." 238 Neb. at 245-46.

In an equally comprehensive discussion of the discipline warranted by the facts in this case, the court said:

"The next step is to determine the appropriate sanction. To determine whether and to what extent discipline should be imposed it is necessary that the following factors be considered: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) his present or future fitness to continue in the practice of law. *State ex rel. NSBA v. Thor*, 237 Neb. 734, 467 N.W.2d 666 (1991); *State ex rel. NSBA v. Rhodes*, 234 Neb. 799, 453 N.W.2d 73 (1990), *cert. denied* 498 U.S. 855, 111 S. Ct. 153, 112 L.Ed 2d 119.

"There is no question that misappropriation of client funds, as one of the most serious violations of duty an attorney owes to his client, the public, and the courts, typically warrants disbarment. See, *State, ex rel. Hunter, v. Hatteroth*, 134 Neb. 451, 279 N.W. 153 (1938) (misappropriation by an attorney of money belonging to his client is such a disregard of duty as to warrant disbarment); *State, ex rel. Hunter, v. Boe*, 134 Neb. 162, 278 N.W. 144 (1938)(an attorney is subject to disbarment because of delinquency in accounting to clients for money received in his professional capacity, in violation of his duty to the public); *State, ex rel. Spillman, v. Priest*, 118 Neb. 47, 223 N.W. 635 (1929) (delinquency in accounting for money received in professional capacity is ground for disbarment as violating duty to maintain respect due courts). ' "In the hierarchy of offenses for which lawyers may be disciplined, stealing from a client must be among those at the very top of the list." ' *The Florida Bar v. McShirley*, 573 So. 2d 807, 808 (Fla. 1991), quoting *The Florida Bar v. Tunsil*, 503 So. 2d 1230 (Fla. 1986).

"Misappropriation affects both the bar and the public because it is a serious offense involving moral turpitude. See, *In re Phillips*, 767 S.W.2d 16 (Mo. 1989) (receiving client's funds and converting them to personal use by placing them in office account without consent of client is illegal conduct involving moral turpitude); *Bambic v. State Bar of California*, 40 Cal. 3d 314, 707 P.2d 862, 219 Cal. Rptr. 489 (1985)(misappropriation of client funds involves moral turpitude and undermines public confidence in legal profession); *In re Patt*, 81 Ill. 2d 447, 410 N.E.2d 870 (1980) (conversion of a client's funds is an act involving moral turpitude). 'Misappropriation is more than a grievous breach of professional ethics. It violates basic notions of honesty and endangers public confidence in the legal profession.' *Grim v. State Bar of California*, 53 Cal. 3d 21, 29, 805 P.2d 941, 943, 278 Cal. Rptr. 682, 684 (1991). ' "The most common definition of an act of moral turpitude is one that is 'contrary to honesty and good morals.' [citations.]" . . ." 'The paramount purpose of the "moral turpitude" standard is not to punish prac-

titioners but to protect the public, the courts, and the profession against unsuitable practitioners. . . . ' " ' *In re Scott*, 52 Cal. 3d 968, 978, 802 P.2d 985, 991, 277 Cal. Rptr. 201, 207 (1991).

"This court disagrees with Veith's assessment that his violation did not involve moral turpitude. At various times, by his own admission, Veith knowingly transferred money from the client trust account to the business account of his law office. He admitted that during this period 20 percent of the money from the trust fund was used by him personally and 80 percent was used for salaries and other office expenses. During this period he bought himself an automobile, provided a telephone for his automobile, furnished his law office with a new leased computer system that cost $2,000 per month, and updated his law library, all so he would appear successful.

"This court also disagrees with Veith's assessment that his conduct does not affect his present or future fitness to continue in the practice of law. In his new partnership arrangement Veith has taken steps so that he cannot sign checks on either the trust or business account. While admirable, this situation creates a paralogism. Veith asks this court and his clients to trust him, yet he apparently has some question as to his own trustworthiness." 238 Neb. at 246-48.

The Nebraska court then considered various factors in mitigation asserted by respondent before concluding that the only appropriate sanction was disbarment. Before this court respondent asserts many of the same mitigating factors considered by the Nebraska Supreme Court and, in addition, asks us to consider his conduct and efforts toward rehabilitaiton since being disbarred in Nebraska.

To his credit, respondent has sought professional help for what has apparently been a long-term period of depression. He continues to undergo regular therapy in Overland Park and evidently has made excellent progress in overcoming his mental and psychological problems. Respondent has moved to the Kansas City area where he now resides with his wife and four children. Respondent's record indicates that he is active in his church and has dedicated considerable time and effort to worthwhile civic and charitable causes, as well as providing pro bono legal services.

Respondent argues at some length here, as he did in Nebraska, that no client suffered any loss as a result of the improper use of his clients' trust funds. While these assertions may be technically correct, respondent does not recognize, or chooses to ignore, the fact that he borrowed $45,600 to replace the funds misappropriated from the trust account. Subsequent to borrowing

such funds from a bank, a friend, and a relative, respondent discharged those loans in a bankruptcy proceeding. While respondent asserts that he intends to repay those loans, apparently no progress has been made toward doing so and no concrete plans for repayment have been suggested. It appears that the loss and damage which would have been suffered by respondent's clients and law partners has merely been shifted to other parties, including a family member and a close friend.

Respondent asks that he be allowed to continue the practice of law in Kansas and has submitted a proposed comprehensive plan of probation, including supervision of his law practice, psychological and psychiatric counseling, financial counseling, and other conditions.

The violations found by the Nebraska court also constitute violations of the disciplinary rules applicable to attorneys in Kansas. As noted earlier, the Board recommended that respondent be indefinitely suspended from the practice of law in Kansas. Under our rules, the recommendations of the Board are advisory only, and this court may impose sanctions greater or lesser than those recommended. Rule 212(f) (1992 Kan. Ct. R. Annot 169); *State v. Phelps,* 226 Kan. 371, 378-79, 598 P.2d 180 (1979); *State v. Johnson,* 219 Kan. 160, 162, 546 P.2d 1320 (1976). Kansas disciplinary cases have consistently recognized that misappropriation of clients' funds is one of the most serious offenses an attorney can commit and the sanction generally imposed has been disbarment. We also note that Sec. 4.11 of the A.B.A. *Standards for Imposing Lawyer Sanctions* (1986), provides that the appropriate sanction for failure to preserve a client's property is disbarment.

After a careful review of the entire record, we concur with the findings, conclusions, and sanctions of the Nebraska Supreme Court. The admitted disciplinary violations in Nebraska are equally serious when considered under the Kansas disciplinary rules, and we find that the appropriate sanction is disbarment.

IT IS THEREFORE ORDERED that the respondent, Douglas Veith, be and he is hereby disbarred from the practice of law in Kansas and the Clerk of the Appellate Courts is directed to strike the name of Douglas Veith from the roll of attorneys in Kansas.

IT IS FURTHER ORDERED that Douglas Veith shall forthwith comply with the provisions of Rule 218 (1992 Kan. Ct. R. Annot 176).

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of this action be assessed to respondent.

Justice Herd would impose discipline of indefinite suspension and therefore dissents from the sanctions imposed.